

# NUMBER 13-14-00581-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GUADALUPE "LUPE" RIVERA SR.,        **Appellant,**

**v.**

LETICIA "LETTY" LOPEZ,        **Appellee.**

### On appeal from the 370th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes

This case is an election contest concerning the District 5 seat on the City Commission of Weslaco. Appellant/cross-appellee Guadalupe Rivera Sr., and appellee/cross-appellant Leticia Lopez appeal the trial court's order voiding the election and ordering a new election. Rivera brings ten issues and Lopez brings four cross-issues. We affirm.

## I.   BACKGROUND

The City of Weslaco, Hidalgo County, Texas held a general election for the District 5 seat on the Weslaco City Commission.   The candidates in the contested election were the incumbent, Guadalupe Rivera Sr. (Rivera), and the challenger, Leticia "Letty" Lopez (Lopez).   The margin was extremely close, with the final canvass of the election showing that Rivera received 487 votes and Lopez received 471 votes.

Lopez filed an election contest against Rivera, alleging that illegal votes were counted.   After a bench trial, the trial court found in favor of Lopez and concluded that the results of the election as shown by the final canvass was not the true outcome because illegal votes were counted.   In support of its judgment, the trial court issued the following findings of fact and conclusions of law,[1] among others:

**Voters Who Cast Their Votes by Mail**

A2. The Court finds by clear and convincing evidence that the following twelve voters cast their mail in ballots for Contestee Lupe Rivera and the person who delivered the mail-in ballot did not provide his/her signature, nor print his/her name and address on the carrier envelope: Marlen or Marlene Martinez, Andres Martinez, Leonor Hinojosa, Leocadia Ledesma, David Lopez, Emma Oviedo, Noe Saldana, Ruth Saldana, Antonia Zepeda, Eulalio Ibanez, Tiburcio Mata and Oralia Saldana.

A3. The Court finds by clear and convincing evidence that Maria Berrones cast her vote by mail-in ballot, did not testify for whom she voted, but did testify that she gave her ballot to Contestee Lupe Rivera, who filled out her ballot for her and mailed her ballot without signing the carrier envelope and without printing his name and address on the carrier envelope.   The Court will find by clear and convincing evidence that Maria Berrones cast her vote for Lupe Rivera.

---

[1] The trial court entered numerous findings and conclusions in support of its judgment. We have only listed those which are most relevant to this opinion.

A4. The Court finds by clear and convincing evidence that the following seven voters cast their vote by mail-in ballots and the person who delivered the mail-in ballots did not provide his/her signature, did not print his/her name and address on the carrier envelope: Arnulfo Gonzalez, Esteban Martinez Sr., Jose Mendez, Maria Garza Mendez, Francisca Pina, Liboria Pina, and Pedro Zepeda. The Court could not determine by clear and convincing evidence for whom the seven voters of these mail-in ballots cast their votes.

B1. Section 86.051(b) of the Texas Elections Code provides that "[a] person other than the voter who deposits the carrier envelope in the mail or with a common or contract carrier must provide the person's signature, printed name, and residence address on the reverse side of the envelope." Violations of [s]ection 86.051(b) of the Texas Elections Code renders a ballot uncountable under Section 86.006(h) of the Texas Elections Code.

**Nonresident Votes**

D4. Jose Roberto Sandoval is not a resident of District 5[,] Weslaco, Hidalgo County, Texas and therefore his vote is disallowed and since this Court has found that he cast his vote for Contestee Lupe Rivera, his vote will be deducted from Contestee Lupe Rivera's total vote.

. . . .

D6. Felipa Cuellar, Cassandra Renea Alaniz, and Irma Rivera are not residents of District 5, Weslaco, Hidalgo County, Texas and therefore their votes are disallowed.

**Ballots Rejected by the Hidalgo County Ballot Board**

E1. Seven mail-in ballots were rejected by the Hidalgo County Ballot Board for the reason that the signatures on the application for mail ballot did not match the signature on the carrier envelope.

E2. The voters of the seven rejected mail-in ballots testified in Court that each voter signed their respective application for a mail in ballot and the carrier envelope and that each voted for Contestee Lupe Rivera, seven votes.

E3. The Court does not find by clear and convincing evidence that the Hidalgo County Ballot Board mistakenly rejected the seven ballots.

3

E4. Therefore the seven mail-in ballots that were rejected by the Hidalgo County Ballot Board for the reason that the signatures on the application for mail ballot did not match the signature on the carrier envelope will not be counted.

**Undervotes**

F1. The Court finds by clear and convincing evidence that four voters did not cast a ballot for City Commissioner District 5, Weslaco, Hidalgo County, Texas.

F2. At least eleven undetermined votes were cast in City Commissioner District 5, Weslaco, Hidalgo County, Texas.

F3. Therefore at least seven undetermined votes remain.

. . . .

The trial court found a total of thirty illegally cast votes, with sixteen illegal votes cast for Rivera, three illegal votes cast for Lopez, and eleven illegal votes that could not be attributed to either candidate. The court then deducted the disallowed votes for each candidate and adjusted the final vote count to 471 votes for Rivera and 468 votes for Lopez. Because "illegal votes were counted in a number in excess of the margin of victory," the trial court concluded that it was unable to declare a winner in the election. The court entered a final judgment voiding the contested election and ordering the City of Weslaco to hold a new election for the District 5 seat on the Weslaco City Commission. *See* TEX. ELEC. CODE ANN. § 221.012 (West, Westlaw through 2013 3d C.S.). The trial court entered comprehensive findings of fact and conclusions of law detailing which votes it had excluded from each of the contested categories. This appeal and cross-appeal ensued.

4

## II.  ELECTION CONTEST LAW AND STANDARD OF REVIEW

An election contest is a special statutory proceeding that provides a remedy for elections tainted by fraud, illegality, or other irregularity.   *Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999); *see* TEX. ELEC. CODE ANN. §§ 221.003–221.014.   Under section 221.003 of the Texas Election Code:

> (a) The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the election contest, as shown by the final canvass, is not the true outcome because:
>
> (1) illegal votes were counted; or
>
> (2) an election officer or other person officially involved in the administration of the election:
>
> (A) prevented eligible voters from voting;
>
> (B) failed to count legal votes; or
>
> (C) engaged in other fraud or illegal conduct or made a mistake.

TEX. ELEC. CODE ANN. § 221.003.

An election contestant has the burden of proving by clear and convincing evidence that voting irregularities were present and that they materially affected the election's results.  *Guerra v. Garza,* 865 S.W.2d 573, 576 (Tex. App.—Corpus Christi 1993, writ dism'd w.o.j.); *Wright v. Bd. of Trustees of Tatum Indep. School Dist.*, 520 S.W.2d 787, 790 (Tex. Civ. App.—Tyler 1975, writ dism'd); *Setliff v. Gorrell*, 466 S.W.2d 74, 78 (Tex. Civ. App.—Amarillo 1971, no writ). Election contestants must allege and prove particularized material irregularities in the conduct of the election and show either 1) that a different and correct result should have been reached by counting or not counting certain specified votes affected by the irregularities, or 2) that the irregularities rendered

5

impossible a determination of the majority of the voters' true will.[2]  *Guerra,* 865 S.W.2d at 576; *Wright*, 520 S.W.2d at 793; *Ware v. Crystal City Indep. School Dist.*, 489 S.W.2d 190, 191–92 (Tex. Civ. App.—San Antonio 1972, writ dism'd).

We review the trial court's judgment in an election contest for abuse of discretion. *McCurry v. Lewis*, 259 S.W.3d 369, 372 (Tex. App.—Amarillo 2008, no pet.).   An abuse of discretion occurs when the trial court acts "without reference to any guiding rules and principles."  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *McCurry*, 259 S.W.3d at 372.   If the trial court acted within its discretion, we cannot reverse the judgment simply because we might have reached a different result. *See Downer,* 701 S.W.2d at 242.

Rivera challenges the trial court's order declaring the election void as an abuse of discretion.   Additionally, Rivera raises several evidentiary issues as well as statutory construction and constitutional issues.   We apply the appropriate standard of review to each corresponding issue; however, we determine the trial court's ultimate decision to declare the election void under an abuse of discretion standard of review.

### III.   MAIL-IN BALLOT DISQUALIFICATION

By his sixth issue, which we address first, Rivera complains that the trial court erred in disqualifying mail-in ballots allegedly mailed in violation of section 86.0051(b) of the Texas Elections Code.   *See* TEX. ELEC. CODE ANN. § 86.0051(b) (West, Westlaw through

---

[2] Rivera correctly asserts that Lopez has the burden of proving a negative proposition—that a challenged vote is not legal.  *See Royalty v. Nicholson*, 411 S.W.2d 565, 575 (Tex. Civ. App.—Houston 1967, writ ref'd n.r.e.).   Our duty is to determine on what potential basis an uncounted vote may have been legal, then review whether Lopez presented evidence that the vote was illegal.   Then, we apply the traditional rule of legal sufficiency review.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Dominguez,* 873 S.W.2d 373, 376 (Tex. 1994) (applying this standard of review to insurance case).

2013 3d C.S.).    Specifically Rivera argues: 1) the Legislature did not intend to require ballot exclusion for violations of section 86.0051; and 2) a reading of section 86.006(f) "could only lead this Court to conclude that mere failure by a person, who is dropping off a carrier envelope on behalf of a voter, to sign his name and provide an address, without more, is not enough to fall within the prohibition of Section 86.006(f) and the ballot exclusion provision in Section 86.006(h)."[3]

## A. Standard of Review

We review a trial court's conclusions of law de novo.    *BMC Software Belg., N.V. v. Marchland*, 83 S.W.3d 789, 794 (Tex. 2002); *Reese v. Duncan*, 80 S.W.3d 650, 655 (Tex. App.—Dallas 2002, no pet.)    When reviewing the trial court's legal conclusions, we evaluate them independently, determining whether the trial court correctly drew the legal conclusions from the facts.    *See BMC Software*, 83 S.W.3d at 794.    Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence.    *Mack v. Landry*, 22 S.W.3d 524, 528 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Our fundamental objective in interpreting a statute is "to determine and give effect to the Legislature's intent."    *Am. Zurich Ins. Co. v. Samudio*, 370 S.W.3d 363, 368 (Tex. 2012); *accord Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).    In turn, "[t]he plain

---

[3] In his statutory construction issue, Rivera also argues that "there are no pleadings on file in this case where Appellee Lopez plead[ed] that persons, who assisted a voter, violated Section 86.006(f) and that those ballots should be excluded under under [sic] Section 86.006(h)."    We reject this argument. Lopez's pleadings included sufficient factual allegations that numerous mail-in ballots should not be counted.    *See* TEX. R. CIV. P. 47 (West, Westlaw through 2013 3d C.S.); *Torch Operating Co. v. Bartell*, 865 S.W.2d 553, 554 (Tex. App.—Corpus Christi 1993, writ denied) (citing *Colbert v. Dallas Joint Stock Land Bank of Dallas*, 102 S.W.2d 1031, 1033 (Tex. 1937) (holding that pleader need not plead specific statute on which claim is based)).

language of a statute is the surest guide to the Legislature's intent." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012). "We take the Legislature at its word, and the truest measure of what it intended is what it enacted." *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013). "[U]nambiguous text equals determinative text," and "'[a]t this point, the judge's inquiry is at an end.'" *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 (Tex. 2006)); *see In re Lee*, 411 S.W.3d 445, 450–451 (Tex. 2013).

### B. Applicable Law

The Texas Election Code provides for the completion and delivery of a mail-in ballot to the early voting clerk. The carrier envelope may be transported and delivered to the early voting clerk only by mail or by common or contract carrier. TEX. ELEC. CODE ANN. § 86.006(a). A person other than the voter who deposits the carrier envelope in the mail or with a common or contract carrier must provide the person's signature, printed name, and residence address on the reverse side of the envelope. *Id.* § 86.0051(b). A ballot returned in violation of section 86.006 may not be counted. *Id.* § 86.006(h).

### C. Analysis

The trial court concluded that "[v]iolations of [s]ection 86.051(b)[4] of the Texas Elections Code renders a ballot uncountable under [s]ection 86.006(h) of the Texas Elections Code." In order to reach this conclusion, the trial court decided that section 86.006 incorporates section 86.0051(b).

---

[4] We infer from the language of the trial court's conclusion of law that the correct statutory reference is 86.0051(b). *See* TEX. ELEC. CODE ANN. § 86.0051(b) (West, Westlaw through 2013 3d C.S.).

Rivera argues that section 86.0051 does not provide for ballot exclusion in the event of a violation, whereas section 86.006 does. *See id.* §§ 86.0051, 86.006(h). Rivera further contends that because the Legislature expressly provided ballot exclusion in one section but not another, the Legislature deliberately decided not to mandate ballot exclusion for improper ballot possession under 86.0051(b). In support of his argument, Rivera cites *Jones v. Morales*, 318 S.W.3d 419 (Tex. App.—Amarillo 2010, no pet.). *Jones* involved the question of whether a violation of section 86.010(d) of the Texas Election Code results in ballot exclusion. *See* TEX. ELEC. CODE ANN. §§ 86.010(c)(e); *Jones*, 318 S.W.3d at 435. In concluding that it does not, our sister court held that the Legislature expressly provides for ballot exclusion for violations of subsections (a) or (b) of section 86.010, but did not include such a provision for subsection (d). *See* TEX. ELEC. CODE ANN. §§ 86.010(a)(b)(d); *Jones*, 318 S.W.3d at 435. Rivera urges us to adopt the reason used by the *Jones* court in interpreting section 86.010 and conclude that a violation of section 86.0051 does not render an uncountable ballot under 86.006. We reject this argument because the statute interpreted in *Jones* is different from the statute in this case.

Section 86.006(f)(4) says in relevant part that:

(f) A person commits an offense if the person knowingly possesses an official ballot or official carrier envelope provided under this code to another. Unless the person possessed the ballot or carrier envelope with intent to defraud the voter or the election authority, this subsection does not apply to a person who, on the date of the offense, was:

. . . .

      (4) a person who possesses the carrier envelope in order to deposit the envelope in the mail or with a common or contract carrier and

9

who provides the information required by Section 86.0051(b) in accordance with that section;

. . . .

TEX. ELEC. CODE ANN. § 86.006(f)(4).   The statute is unambiguous.   A plain reading of this statute means that if a person who possesses another's ballot or carrier envelope and fails to provide their signature, printed name, and residence address on the carrier envelope as required by section 86.0051(b), then section 86.006(f) is violated, thereby rendering the ballot uncountable under 86.006(h).   *See id.* §§ 86.006(f), (h).

Our review of the election code requires the conclusion that someone who possesses another mail-in ballot must provide the information required by 86.0051(b). Since we conclude the statute is unambiguous, and construe the plain language, we need not consider legislative intent.   *See In re Office of Att'y Gen.*, 422 S.W.3d at 629.   The trial court correctly disqualified the mail-in ballots handled in violation of the election code. We overrule appellant's sixth issue.

### IV.   EVIDENTIARY CHALLENGE

In issues one through five, seven and nine, Rivera challenges the legal and factual sufficiency of the evidence that supports the trial court's determination that the challenged votes were invalid.[5]

### A.   Applicable Law and Standard of Review

### 1.  Legal Sufficiency

---

[5] We refer to the issues as Rivera numbers them in his brief, but reorganize them in our opinion. *See* TEX. R. APP. P. 44.1.

10

In conducting a legal sufficiency review under a clear and convincing standard, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). We disregard "all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* at 266. But, in reviewing legal sufficiency of the evidence under a clear and convincing standard, we cannot disregard contrary evidence that the trier of fact could not ignore. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005). When the trial court has acted as fact-finder, the trial court determines the credibility of the witnesses and the weight to be given their testimony. *See id.* at 819; *see also Woods v. Woods*, 193 S.W.3d 720, 726 (Tex. App.—Beaumont 2006, pet. denied). In resolving factual disputes, the trial court may believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). In making credibility determinations, the trier-of-fact "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *City of Keller*, 168 S.W.3d at 820. Therefore, the trier-of-fact is not "free to believe testimony that is conclusively negated by undisputed facts." *Id.* However, if the trier-of-fact could reasonably believe the testimony of one witness or disbelieve the testimony of another witness, the appellate court "cannot impose [its] own opinions to the contrary." *Id.* at 819.

11

## 2. Factual Sufficiency

In conducting a factual sufficiency review, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the plaintiff's allegations. *See In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002) (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982) (holding that the clear-and-convincing standard "adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process.")); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (holding that clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.").

## B. Ballots Rejected by Hidalgo County Ballot Board

By his first issue, Rivera complains that the trial court improperly rejected seven mail-in ballots previously rejected by the Hidalgo County Ballot Board because "the evidence established by clear and convincing evidence that the signatures on the applications and those on the carrier envelopes containing the ballots were in fact the signatures of the voters." We construe Rivera's issue to mean that the evidence was legally sufficient to support a finding that the mail-in ballots should have been accepted. Rivera also argues that Lopez's pleadings are a judicial admission that the ballots were improperly rejected.

### 1. Early Voting

Voting early by mail requires a voter to apply in writing for a ballot and then mail the completed ballot to the election clerk in an official carrier envelope bearing the

signature of the voter. *Alvarez v. Espinoza*, 844 S.W.2d 238, 244 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.); TEX. ELEC. CODE ANN. § 86.005(c) (West, Westlaw through 2013 3d C.S.). The ballot board may accept a ballot voted early by mail "only if: . . . neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness. . . ." TEX. ELEC. CODE ANN. § 87.041(b)(2). The law thus requires those who vote early by mail to sign both the application and the carrier envelope. *Alvarez,* 844 S.W.2d at 245.

When a contestant challenges a ballot board's rejection of a ballot, the ballot board is presumed to have acted properly and it is the contestant's burden to show by clear and convincing evidence the board erred.[6] *Jones v. Morales*, 318 S.W.3d 419, 423–24 (Tex. App.—Amarillo 2010, no writ); *see Tiller v. Martinez*, 974 S.W.2d 769, 773–74 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.) (explaining that when contestant contends election judge rejected votes that should have been accepted, rule has long presumed that each rejected ballot was cast by an illegal voter). Discharging this burden requires the contestant to show that the ballot was properly cast. *Jones*, 318 S.W.3d at 424; *Tiller*, 974 S.W.2d at 774.

The ballot board acts on the basis of the signatures before it. *Jones*, 318 S.W.3d at 424. The Election Code does not require the board to make inquiry of voters whose signatures do not match. *Id.*; *see* TEX. ELEC. CODE ANN. § 87.041. But in an election

---

[6] Rivera raised this issue in his first amended answer as an "affirmative defense" and again raised this issue during trial. Lopez raised this issue in her second amended petition, but then claimed to have abandoned this pleading ground during trial. Subsequently, Rivera called the witnesses listed in Lopez's second amended petition to testify regarding the improperly rejected mail-in ballots.

13

contest based on ballots rejected on the ground of signature deficiency, the district court may receive oral testimony from the voter or other witnesses regarding the similarity of the signatures and may compare the signatures. *Id.* The court may rely on its own comparison without the aid of expert testimony. *Id*; *see Tiller,* 974 S.W.2d at 777 (holding that when signatures appear to be different, the trial court need not accept testimony of the voter or other witnesses that the voter made both signatures but may rely on its own comparison to determine whether there is a discrepancy that supports the Board's rejection of the ballot).

### 2. Analysis

We first address Rivera's judicial admission argument. Rivera claims that Lopez's pleadings, which allege that the Hidalgo County Ballot board improperly rejected the ballots, constitute a judicial admission that seven ballots were improperly rejected.

Assertions of fact, not pleaded in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) (quotations omitted). The vital feature of a judicial admission is its conclusiveness on the party making it. *Gevinson v. Manhattan Const. Co. of Okla.*, 449 S.W.2d 458, 466 (Tex. 1969) (holding that it is important to consider whether the statement relates to facts peculiarly within declarant's own knowledge or is simply his impression of a transaction or an event as a participant or an observer); *Howard Hughes Med. Inst. v. Neff*, 640 S.W.2d 942, 950 (Tex. App.—Houston [14th Dist.] 1982, write ref'd n.r.e.) (holding that attorney's statement that will had been properly executed was not a judicial admission where it was made on the basis of the mistaken assumption that certain

14

evidence would support that legal conclusion). However, statements made by a party or his attorney in the course of judicial proceedings which are not based on personal knowledge or are made by mistake or based upon a mistaken belief of the facts are not considered judicial admissions. *Gevinson*, 449 S.W.2d at 460.

We disagree with Rivera's contention because Lopez's pleaded statement about the seven ballots amounts to a legal conclusion and is not based on personal knowledge. Lopez's pleaded statements regarding the previously rejected ballots was an impression of a transaction. *See Gevinson,* 449 S.W.2d at 466. There is no allegation or evidence Lopez was involved in the rejection of the ballots, viewed the ballots, or even observed the ballot board's actions. Thus, Lopez's pleadings do not constitute judicial admissions. *See id.*

We now turn to the Rivera's evidentiary argument and the testimony presented at trial. Overline Alaniz testified on direct examination that he filled out the ballot, signed it, put the ballot in the carrier envelope, signed the carrier envelope, and put the carrier envelope in the mailbox. However, on cross-examination, he acknowledged that the signatures on the ballot and carrier envelope looked different. He explained: "[t]hat's just the way it is. That's the way it is. I mean, because I noticed that I don't sign the same signs when—when I—I'm going through signing. When I sign a couple of things, a couple of signatures, I can see that I—I don't sign the—sign it exactly." The remaining six voters: Bentura Arriaga; Irene Rodriguez; Maria Ramirez; Patricio Ramirez; Francisca Macias; and Norma Gutierrez all testified that the signatures on the ballot and carrier envelope were theirs.

15

In its findings of fact and conclusions of law, the trial court stated that: "[t]he voters of the seven rejected mail-in ballots testified in Court that each voter signed their respective application for a mail in ballot and the carrier envelope and that each voted for Contestee Lupe Rivera . . . ." The trial court then concluded that it did not find by clear and convincing evidence that the Hidalgo County Ballot Board mistakenly rejected the seven ballots.

Rivera argues that the trial court had no reason to disbelieve the undisputed testimony of the voters regarding their signatures and cast votes. Further, Rivera points out that all seven of the voters appeared through subpoena and none of the voters testified that they knew Rivera personally.

We agree that in the proper circumstances oral testimony and comparison of signatures might refute the Early Voting Ballot Board's decision. But the trial court is not required to accept the testimony of the voter or other witnesses that the voter made both signatures. *See Alvarez*, 844 S.W.3d at 245. The trier of fact may compare signatures and decide their validity without the aid of expert testimony. *See Nass v. Nass*, 149 Tex. 41, 132–33 (1950); *Kennedy v. Upshaw*, 64 Tex. 411, 420 (1885); *Dickerson v. Mack Fin. Corp.*, 452 S.W.2d 552, 557 (Tex. Civ. App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.); *See Alvarez*, 844 S.W.3d at 245. The trial court was not required to believe the testimony about the signatures. *See Collora v. Navarro*, 574 S.W.2d 65, 69 (Tex. 1978); *Gevinson,* 449 S.W.2d at 467; *Medrano v. Gleinser*, 769 S.W.2d 687, 689–90 (Tex. App.—Corpus Christi 1989, no writ); *Alvarez*, 844 S.W.2d at 245–46.

16

Our review of the record shows that none of the challenged sets of signatures are similar enough to compel the conclusion that the same person signed both the application and the envelope, or to override the court's finding that different persons signed them. The evidence is legally and factually sufficient to support the rejection of the six ballots submitted with different signatures on the applications and the carrier envelopes. *See Alvarez*, 844 S.W.2d at 246. We overrule Rivera's first issue.

## C. Non-Resident Voting

By issues two and four, which we consider together, Rivera complains that the evidence was legally and factually insufficient to support a finding that four voters were not residents of District 5.

### 1. Residence

The Election Code provides the following principles for determining a voter's residence:

(a) In this code, "residence" means domicile, that is, one's home and fixed place of habitation to which he intends to return after any temporary absence.

(b) Residence shall be determined in accordance with the common law rules, as enunciated by the courts of this state, except as otherwise provided by this code.

(c) A person does not lose his residence by leaving his home to go to another place for temporary purposes only.

(d) A person does not acquire a residence in a place to which he has come for temporary purposes only and without the intention of making that place his home.

TEX. ELEC. CODE ANN. § 1.015. The Texas Supreme Court has stated that "volition, intention and action" are "equally pertinent" elements to consider when determining

17

residency. "Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined." *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964). Factors such as where a person sleeps and keeps personal belongings may support presence and intent. *Id.* One element alone is insufficient to establish residency; the elements must form a nexus to fix and determine a residence. *Id.* When a person's statements regarding residence are inconsistent with other evidence showing actual residence, "such statements 'are of slight weight' and cannot establish residence in fact." *In re Graham*, 251 S.W.3d 844, 850 (Tex. App.—Austin 2008, no pet.) (quoting *Texas v. Florida*, 306 U.S. 398, 424 (1939)). On appeal, we are limited to determining whether the trial court's credibility determinations were reasonable. *See City of Keller*, 168 S.W.3d at 819–20; *McDuffee v. Miller*, 327 S.W.3d 808, 820 (Tex. App.—Beaumont 2010, no pet.)

Rivera asserts throughout his brief that Lopez must prove "by clear and convincing evidence that [each voter] did not have the present intention of residing at [the registered address]", i.e. the negative of the present intention of residence. This is incorrect. Lopez's burden is to show by clear and convincing evidence that a voter is not a resident of the district where they registered, and, therefore their vote is not legal. *See* TEX. ELEC. CODE ANN. § 221.003; *Reese*, 80 S.W.3d at 656; *Medrano v. Gleinser*, 796 S.W.2d 687, 688 (Tex. App.—Corpus Christi 1989, no writ). It is not necessary for Lopez to negate present intention in order to disprove residence since each factor standing alone—bodily presence and intent—is insufficient to prove residency. *See Mills,* 377 S.W.2d at 637; *Tovar v. Bd. of Trs. of Somerset Indep. Sch. Dist.,* 994 S.W.2d 756, 762 (Tex. App.—

18

Corpus Christi 1999, no pet.) (rejecting appellants claim of residency where he lived temporarily outside of the district but maintained an intention to return to his permanent residence in the district); *see also Prince v. Inman*, 280 S.W.2d 779, 781 (Tex. Civ. App.— Beaumont 1955, no writ) (holding appellant's intention to return if job proved unsatisfactory does not have any significance, since it was not a fixed intention, not formed or present intent to return, but was at most intent subject to future contingency).

### 2. Felipa Cuellar, Cassandra Alaniz, Irma Rivera, and Jose Sandoval

Felipa Cuellar, Cassandra Alaniz, and Irma Rivera registered to vote using the address of a home belonging to Hortencia Cuellar. None of the three voters testified at trial. Instead, Hortencia Cuellar[7], mother of Felipa and grandmother of Cassandra, testified by deposition on direct-examination that she lives in a two-bedroom, one bathroom house. She sleeps in one of the bedrooms, and the other is used for "whenever I have my grandchildren to go to [sic] sleep there." Hortencia stated that her daughter, Felipa, and granddaughter Cassandra sleep at the house "occasionally" and that her brother Raul Rivera, Sr. and his wife Irma Rivera live in a rented home elsewhere. Raul Rivera, Sr. and Irma lived with Hortencia approximately fifteen years ago, but have not lived with her since. Hortencia further testified that no one keeps clothing at her home or stores their personal items in her home and that she does not receive anyone else's mail except her own. On cross-examination, Hortencia stated that Felipa, Cassandra, and Irma consider her house as their home of residence, even though they

---

[7] Hortencia Cuellar is appellant Rivera's sister.

19

may rent and live in other places. She then stated that she "sometimes" receives mail for each of the three family members.

Jose Heriberto Sandoval (Eddie) registered to vote using the address 716 N. Padre, Weslaco, Texas. Sandoval did not testify at trial. Instead, appellant Rivera testified regarding Sandoval's residence:

[Lopez Counsel]: And who is he? Okay. Do you know Eddie [Sandoval] very well?

[Rivera]: Yes, sir, very well. He practically grew up with my— with my son and—and stayed in my house because he was going to the Weslaco School District.

. . . .

[Rivera]: He grew up in my house.

[Lopez Counsel]: I'm sorry?

[Rivera]: He grew up at my home.

[Lopez Counsel]: Until when?

[Rivera]: It's off and on. I—I would say the last time that I saw him was probably four or five months ago, I guess.

[Lopez Counsel]: Okay.

[Rivera]: Or maybe a little bit longer than that.

[Lopez Counsel]: For what—okay. When was the last time you saw Eddie and Lupe, Jr. together?

[Rivera]: In—I couldn't recall. I wouldn't recall right now. I can't remember.

Illiana Guerrero, Lupe Rivera, Jr.'s common-law wife, testified that Sandoval was a childhood friend of Lupe Rivera, Jr. but that she had never seen him at the 716 N. Padre address and did not know where Sandoval lived.

Rivera argues that Hortencia's testimony shows that Felipa, Cassandra, and Irma all rightfully claim her home as their residence. Rivera further argues that because the trial court overruled Lopez's challenge to Raul Rivera, Sr., Irma Rivera's husband who registered to vote using Hortencia's residence, the trial court should have ruled similarly for Irma Rivera.[8] We disagree. Hortencia's testimony shows that despite visiting the home, including overnight visitation, neither Felipa, Cassandra, nor Irma has taken any direct action to establish residence in Hortencia's home. Similarly, appellant's and Illiana's testimonies, taken together, show that while Sandoval may have lived in appellants home in the distant past, he is not living there presently. Moreover, it is reasonably inferred that because of a lapse in communication between appellant and Sandoval, Sandoval has no present intent to return to appellants home.

The evidence is legally and factually sufficient to support the trial court's finding that these four voters are not residents of District 5. It cannot be seriously argued that the homes where each registered to vote is their "home or fixed place of habitation" under section 1.105. *See* TEX. ELEC. CODE ANN. § 1.105. Even assuming that each voter meets the intent element for residence, their presence at each home is too attenuated to count as habitation. *See Mills,* 377 S.W.2d at 637; *State v. Fischer*, 769 S.W.2d 619,

---

[8] Likewise, Lopez challenges the trial courts determination of Raul Rivera, Sr.'s residency on cross-appeal.

624 (Tex. App.—Corpus Christi 1989, writ dism'd w.o.j) (declining to find residency absent combined volition, intention, and action). We overrule Rivera's second and fourth issues.

### D. Undervotes

By his third, fifth, and ninth issues, Rivera claims that the evidence is legally and factually insufficient to support a finding that Felipa Cuellar, Cassandra Alaniz, Irma Rivera, Jose Sandoval, and seven undetermined mail-in ballots[9] voted in the contested election. Specifically, Rivera argues that Lopez failed to prove that the eleven voters were not among the four votes who did not cast a ballot for the city commissioner in the District 5 election.

In the contested election, the official canvass report shows the number of ballots cast from each precinct that did not contain a vote in the District 5 race—the "undervotes." An undervote is a ballot uncounted because of unclear marking by the voter. *See generally Bush v. Gore*, 531 U.S. 98, 102 (2000). In its findings of fact and conclusions of law, the trial court determined that at least eleven undetermined votes were cast in the contested election. The trial court considered the undervotes by reducing the number of undetermined votes from eleven to seven. Since the seven undetermined votes was greater than the adjusted margin of victory—three votes—the trial court was unable to determine a winner in the contested election.

Rivera argues that Lopez must prove by clear and convincing evidence that the illegal votes were cast in the election being contested and cites *Miller v. Hill*, 698 S.W.2d 372, 375 (Tex. App.—Houston [14th Dist.] 1985, writ dism'd w.o.j.) in support of his

---

[9] We address the legality of the mail-in ballots later in this opinion.

argument. However, *Miller* is distinguishable because the contestant in *Miller* offered no evidence that the allegedly illegal voters voted at all. Here, the record contains the voting history of the each of the four voters and indicates that all of them voted in the contested election.

We disagree with Rivera's argument that Lopez must prove the challenged votes were not among the undervotes. As previously noted, the evidence shows that Lopez presented evidence showing that enough illegal votes were cast in the contested election to declare the election results void. *See* TEX. ELEC. CODE ANN. § 221.009; *Gonzales v. Villarreal*, 251 S.W.3d 763, 782 (Tex. App.—Corpus Christi 2008, pet. dism'd). Moreover, although some of the illegal votes may have been among the undervotes, the trial court considered this possibility and adjusted by reducing the undetermined votes by the number of undervotes. Because the evidence is legally and factually sufficient to support the trial court's decision, we overrule Rivera's third, fifth, and ninth issues.

### E. Mail-in Ballots Disqualified by the Trial Court

By his seventh issue, Rivera argues that the trial court erred in disqualifying numerous mail-in ballots which were allegedly mailed in violation of Section 86.0051(b) in that, as to the mail-in ballots disqualified, there is no evidence or insufficient evidence that any "person knowingly possess[ed] an official ballot or official carrier envelope provided to another."

The trial court found that the following twelve voters cast their mail-in ballots for Rivera and the person who delivered the mail-in ballots to be mailed did not provide their signature, name, or address on the carrier envelope: Marlen Martinez, Andres Martinez,

23

Leonor Hinojosa, Leocadia Ledesma, David Lopez, Emma Oviedo, Noe Saldana, Ruth Saldana, Antonia Zepeda, Eulalio Ibanez, Tiburcio Mata, and Oralia Saldana. The trial court found that Maria Barrones voted by mail-in ballot, did not testify who she voted for, but did testify that she gave her ballot to Rivera, who filled out her ballot for her and mailed her ballot without signing the carrier envelope or printing his name and address on the carrier envelope. The trial court deducted the previously named votes from Rivera's vote total.

The trial court further found that the following seven voters cast their votes by mail and that the person who delivered the mail-in ballots did not provide their signature, name, or address on the carrier envelope: Arnulfo Gonzalez, Esteban Martinez, Sr., Jose Mendez, Maria Garza Mendez, Francisca Pina, Liborio Pina, and Pedro Zepeda Martinez. The trial court could not determine for which candidate the seven voters cast their votes and thus included the seven votes in the "undetermined" category.

Section 86.006(f)(4) of the Texas Elections Code prohibits a person from possessing an official ballot of another. *See* TEX. ELEC. CODE ANN. § 86.006(f)(4). If a person possesses a ballot of another in order to mail the ballot, then that person must provide the information required by section 86.0051(b). *See id.* § 86.0051(b).

With the exception of Jose Mendez,[10] all of the previously listed voters testified that they did not personally mail their ballots. Instead, they gave their ballot to another

---

[10] Jose Mendez did not testify at trial. However, Maria Mendez testified that Graciela Sanchez took Mendez's and her husband's completed ballots—presumably to mail them. We note that Maria Mendez and Jose Mendez listed the same address on their mail-in ballots and therefore it is a reasonable inference they are husband and wife. *See Johnson v. Buck*, 540 S.W.2d 393, 411 (Tex. Civ. App.—Corpus Christi 1976, writ ref'd n. r. e.) (holding that trial judge may draw reasonable inferences and deductions from the evidence, and that his findings may not be disregarded by an appellate court if the record discloses evidence of probative value which, with inferences that may be properly drawn from the evidence, will

person who mailed it for them. Because the person tasked with mailing the ballots necessarily possesses the ballots, the person doing the mailing is required to provide their name, address, and signature on the carrier envelope. *See id.* § 86.0051(b). The record, however, shows that none of the voters' ballots had any name, other than their own, listed on the carrier envelopes. From the record it is clear that the mail-in ballots were intentionally handled by someone other than the voter, presumably for the purpose of mailing the ballot. Even though such possession is presumably innocent, it is still "knowing possession" sufficient to render the ballot uncountable under subsection 86.006(f) and (h). *See id.* §§ 86.006(f), (h); *see also Reese*, 80 S.W.3d at 658 (holding that compliance with section 86.006 is mandatory). The evidence is legally and factually sufficient to support the trial court's ruling. We overrule Rivera's seventh issue.

## V. VOTING RIGHTS

By his eighth issue, Rivera complains that the trial court's disqualification of ballots found in violation of section 86.0051(b) of the Texas Elections Code is an unconstitutional deprivation of the right to vote.

It is unclear from his briefing which particular constitutional provision Rivera is asserting, or whether it is the federal or state constitution. To brief a state constitutional issue adequately, appellant must present specific arguments and authorities supporting his contentions. *See* TEX. R. APP. P. 38.1(h); *Brown v. Tex. Bd. of Nurse Examiners,* 194 S.W.3d 721, 723 (Tex. App.—Dallas 2006, no pet.). Because he failed to meet this burden, appellant's constitutional claims are inadequately briefed.

---

reasonably support such findings).

25

Moreover, even if we construe Rivera's issue as properly briefed, it would fail on the merits because Rivera has no standing to address alleged violations of a third party's constitutional rights. Constitutional rights are personal and may not be asserted vicariously. *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973) (citing *McGowan v. Maryland*, 366 U.S. 420, 429–430 (1961)). Such a principle reflects the conviction that under our constitutional system, courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. *See Younger v. Harris*, 401 U.S. 37, 52 (1971). Constitutional judgments are justified only out of the necessity of adjudicating rights in particular cases between the litigants brought before the Court. None of the voters whose voting rights are allegedly being violated appear as litigants in this case. We overrule Rivera's eighth issue.

## VI.    ELECTION CONTEST RESULTS

By his tenth issue, Rivera challenges the trial court's ruling that it was unable to declare a winner in the contested election and ordering a new election between Rivera and Lopez. Specifically, Rivera demonstrates the different combination of issues and rulings that would lead our opinion to agree with his advocated position.

We disagree with Rivera and hold that the trial court correctly excluded the seven mail-in ballots previously rejected by the Hidalgo County Ballot Board, correctly disqualified the votes of Felipa Cuellar, Cassandra Alaniz, Irma Rivera, and Jose Sandoval on the basis of residency, and correctly excluded the ballots found in violation of section 86.006.

26

As we have previously discussed, because the trial court determined that the number of illegal but undetermined votes is greater than the margin of victory, the trial court did not abuse its discretion in declaring the contested election void and ordering a new election.

## VII.    CROSS-APPEAL

By four issues on cross-appeal, Lopez argues that the evidence was: 1) legally sufficient to prove three additional illegal votes were cast for Rivera; 2) legally insufficient to determine that three voters cast their illegal votes for Lopez; 3) legally sufficient to prove nine additional illegal but undetermined votes were cast; 4) legally sufficient to prove that only one undervote could have been among the undetermined illegal votes. However, even if we add or subtract all of the votes from each category as Lopez urges, the number of undetermined votes will still be greater than the margin of victory.

Sustaining Lopez's first and second issues would give Lopez 471 votes to Rivera's 468 votes, with a margin of victory of three votes with at least ten undetermined illegal votes.[11]   Sustaining Lopez's third issue increases the number of undetermined votes to nineteen, while sustaining Lopez's fourth issue further increases the undetermined votes to twenty two.[12]

The Texas Election Code provides that the court hearing an election contest may compel an illegal voter to disclose the candidate for whom they voted.  *See* TEX. ELEC.

---

[11]  The undetermined illegal votes would include the three votes that Lopez argues were incorrectly deducted from her final vote tally.

[12]  This included deducting the maximum of four undervotes.

CODE ANN. § 221.009(a). However, where the number of illegal votes is equal to or greater than the number of votes necessary to change the outcome of an election, the tribunal may declare the election void without attempting to determine how individual voters voted. *See id.* § 221.009(b). Thus, Lopez's cross-appeal issues, even if sustained, will not create a margin of victory that is greater than the number of undetermined votes.[13] Because these issues are not dispositive of this appeal, we need not address them. *See* TEX. R. APP. P. 47.1; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *see also* TEX. R. CIV. P. 166a(c).

## VIII. CONCLUSION

We affirm the order of the trial court declaring the contested election void.


GREGORY T. PERKES
Justice

Delivered and filed the
14th day of May, 2014.

---

[13] This is true even if the issues are sustained in part and overruled in part.

28