

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00297-CV

APPROXIMATELY $23,606.00 UNITED STATES CURRENCY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 100th District Court
Carson County, Texas
Trial Court No. 11734, Honorable Stuart Messer, Presiding

March 27, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Guinapauline Santos, Real Party in Interest, appeals the trial court's summary judgment granting the State's forfeiture petition and awarding it the seized $23,606. By her appeal, appellant contends the trial court erred by denying her motion to dismiss for want of prosecution. Santos also contends the statutory forfeiture scheme violates constitutional protections. We affirm.

*Background*

Santos moved the trial court to dismiss the State's action for want of prosecution on the failure of the State to prosecute the forfeiture action to final disposition within one year. The Texas Rules of Civil Procedure provide that a trial court may dismiss for want of prosecution when a case is "not disposed of within time standards promulgated by the Supreme Court under its Administrative Rules." *See* TEX. R. CIV. P. 165a(2). The relevant time standard in this non-family-law, nonjury trial is one year. *See* TEX. R. JUD. ADMIN. 6.1(a)(2), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. F app. (West Supp. 2019). The particular rule states:

> District and statutory county court judges of the county in which cases are filed should, so far as reasonably possible, ensure that all cases are brought to trial or final disposition in conformity with the following time standards:
>
> * * * * *
>
> (2) *Civil Nonjury Cases.* –Within 12 months from appearance date.

*Id.* The application of Rule 6 is discretionary and nonbinding. *See* TEX. GOV'T CODE ANN. § 74.024(c)(1) (West 2013) (authorizing the Texas Supreme Court to promulgate "nonbinding time standards for pleading, discovery, motions, and dispositions"); *see also Jones v. Morales*, 318 S.W.3d 419, 427 (Tex. App.—Amarillo 2010, pet. denied); *In re Fifty-One Gambling Devices*, 298 S.W.3d 768, 774 (Tex. App.—Amarillo 2009, pet. denied). In other words, Rule 6 does not fix a bright line demarking the outward limit of a trial court's discretion to control its docket. *See Jones*, 318 S.W.3d at 427. By its own terms, Rule 6 recognizes that, "in especially complex cases or special circumstances it may not be possible to adhere to these standards." TEX. R. JUD. ADMIN. 6.1(d).

The relevant time frame is as follows. On June 6, 2016, the State filed its notice of seizure and intended forfeiture. *See* TEX. CODE CRIM. PROC. ANN. art. 59.04 (West 2018). Santos filed her general denial on July 5, 2016. The State sent its Request for Admissions on December 15, 2016. Santos's response to the Request for Admissions was due January 14, 2017, but was never filed.[1] The State filed its motion for summary judgment on November 29, 2017. Santos filed her response along with a motion to dismiss for want of prosecution on December 13, 2017. A hearing on the motion for summary judgment was set for February 6, 2018, but was not held. The parties entered into a tacit agreement to informally abate the instant case pending disposition of a factually similar case by the Texas Supreme Court in *In re Callano*, No. 18-0200. The beginning date of that informal abatement is not entirely clear from the record; nor is the date on which the parties considered the case informally reinstated. Nonetheless, the Texas Supreme Court denied the petition for mandamus in *In re Callano* on April 13, 2018, without written opinion.

It appears that the parties did not immediately undertake further action in the matter following issuance of the *In re Callano* decision. Yet, on May 9, 2019, the State sought a hearing on its previously filed motion for summary judgment. After the trial court reset the matter for hearing on June 3, 2019, Santos filed a motion asking, in the alternative, that the trial court vacate the June 2019 setting and grant Santos a

---

[1] We note that trial counsel in this cause participated in *In re Callano* in this Court and the Texas Supreme Court. *Callano* also involved a forfeiture, and counsel presented a similar argument there to that postulated here. We noted in *Callano* that counsel acknowledged he deliberately failed to respond to discovery there. *In re Callano*, No. 07-17-00435-CV, 2017 Tex. App. LEXIS 11753, at *2–3 (Tex. App.— Amarillo Dec. 18, 2017, orig. proceeding) (mem. op.). We note here a similar concession by counsel regarding the failure to answer the State's request for admissions, though the concession is less clear as to whether the omission was deliberate.

continuance in order to complete discovery. *See* TEX. R. CIV. P. 166a(g). Further delay followed, and the trial court again reset the hearing for August 12, 2019. After that, Santos filed her notice of challenge to the constitutionality of the statutory forfeiture scheme. Ultimately, the trial court held a hearing on both the motions for summary judgment and dismissal on August 12. It denied the latter and granted the former.

As the parties have presented, we examine the duration of the proceeding in two distinct phases. We do so because, by agreement, the parties agreed to an informal abatement of the cause while this Court and the Texas Supreme Court addressed similar issues in an unrelated case. *See In re Callano*, No. 07-17-00435-CV, 2017 Tex. App. LEXIS 11753 (Tex. App.—Amarillo Dec. 18, 2017, orig. proceeding) (mem. op.).

Santos maintains that the first time period in excess of one year that preceded that the State's motion for summary judgment should have prompted the trial court to dismiss the State's action for want of prosecution. That period is measured from the date Santos made her appearance to the date that the State filed its motion for summary judgment. She also contends that the nearly thirteen-month period following that abatement period required dismissal of the State's case. She measures this second period from April 13, 2018, when the Texas Supreme Court issued its decision in *In re Callano* to May 9, 2019, when the State again requested a hearing on its motion for summary judgment.

*Analysis*

We review a trial court's ruling on a motion to dismiss for want of prosecution by the abuse of discretion standard. *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997) (per curiam); *Jones*, 318 S.W.3d at 427. Here, because Santos sought dismissal based on the State's failure to adhere to the disposition standard in Rule 6.1, we rely on that rule's

4

own provisions, calling for the disposition of the case within one year "as far as reasonably possible" but also allowing for "special circumstances" that may excuse the delay in excess of one year. *See* TEX. R. JUD. ADMIN. 6.1(a), (d).

We first examine the initial delay, that from the time of appellant's appearance to the time the State filed its motion for summary judgment. This span was approximately seventeen months. In the trial court's denial of the motion to dismiss, it cited Santos's failure to participate in discovery. Indeed, as we have noted before in response to such conduct, the failure to participate in discovery serves as an impediment to the efficient disposition of the case. *See In re Callano*, 2017 Tex. App. LEXIS 11753, at *3. It is "rather problematic to dismiss the State's suit because of a delay in its timely disposition when the delay was caused, in part, by [a litigant]'s deliberate disregard of her obligation to cooperate in discovery." *Id.* at *4. Given this, Santos's refusal to cooperate in discovery as evinced by her failure to respond to the requests for admissions provided the trial court with basis to deny her motion to dismiss.

We also note that, sometime after she filed her motion to dismiss, Santos agreed to further delay the disposition of the case pending disposition of *In re Callano.* That too is a consideration available to the trial court in assessing whether to grant the motion to dismiss. *See Bishop v. Wollyung*, 705 S.W.2d 312, 314–15 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) (despite ten-year delay in prosecution of suit, concluding that trial court did not abuse its discretion by denying defendant's motion to dismiss for want of prosecution when defendant acquiesced in the delay).

Santos next points to the delay following the Texas Supreme Court's decision in *In re Callano* on April 13, 2018. About a year passed before the State requested a hearing

on its motion for summary judgment. During that interim, Santos still had yet to supply her discovery responses to the State's outstanding discovery requests. She also moved for a continuance to conduct additional discovery per her Rule 166a(g) motion filed May 23, 2019. In it, she maintained that she had sought but been unable to obtain recently requested depositions and sought, among other remedies, further delay of the proceeding so that she could conduct further discovery. It should be noted that the State had responded to Santos's initial discovery requests and, since then, had not been asked to supply anything further until May 2019.

It was also months after the State filed its request to reset the summary judgment hearing that Santos filed her notice of intent to challenge the constitutionality of the forfeiture statutes. This also invited further delay given the procedural hurdles created by statute when one challenges the constitutionality of a statute.[2]

The foregoing circumstances lay before the trial court. They were indicia it reasonably could have considered in deciding to deny dismissal. Thus, its decision to deny that motion was not an instance of abused discretion. *See Enexco, Inc. v. Staley*, No. 05-15-01047-CV, 2017 Tex. App. LEXIS 109, at *7 (Tex. App.—Dallas Jan. 9, 2017, no pet.) (mem. op.) (observing that special circumstances, such as a venue challenge and a plea in abatement, "made it unlikely, if not impossible, for the case to be disposed

---

[2] Texas law calls on a party who files a petition, motion, or other pleading challenging the constitutionality of a statue to also file a specific form, which the court must serve on the Attorney General of Texas. *See* TEX. GOV'T CODE ANN. § 402.010(a) (West Supp. 2019). The trial court may not enter a final judgment holding a statute of the state unconstitutional before the 45th day after the date such notice was served on the attorney general. *See id.* § 402.010(b). "The purpose of this statute is to provide the attorney general with the opportunity to be heard on issues important to the laws of the state—the laws the attorney general's office is charged with defending and enforcing." *In re State*, 489 S.W.3d 454, 454–55 (Tex. 2016) (orig. proceeding) (quoting *In re State,* No. 04-14-00282-CV, 2014 Tex. App. LEXIS 5653, at *2 (Tex. App.—San Antonio, May 28, 2014, orig. proceeding) (mem. op.)).

of within the twelve-month time frame in the administrative rules"). We overrule Santos's first issue.

*Constitutionality of Forfeiture Statute*

Santos next contends that statutory framework of the civil forfeiture procedure deprives citizens of "due process in determining their right to retain possession and ownership of the property." We overrule the issue.

An appellant's failure to cite legal authority or provide substantive analysis in support of her issues constitutes inadequate briefing and waives the complaint. *Dimock Operating Co. v. Sutherland Energy Co., LLC*, No. 07-16-00230-CV, 2018 Tex. App. LEXIS 2865, at *31 (Tex. App.—Amarillo Apr. 24, 2018, pet. denied) (mem. op.); *Sunnyside Feedyard, L.C. v. Metro. Life Ins. Co.,* 106 S.W.3d 169, 173 (Tex. App.— Amarillo 2003, no pet.). Here, Santos deems the civil forfeiture system unconstitutional and a denial of due process because those who prosecute and adjudicate the suits allegedly encounter financial benefit. For instance, "[t]he current system . . . ha[s] criminal prosecutor[s] in charge of arranging deals with law enforcement agencies to split the profits from law enforcement[']s seizing property" and "[t]he prosecutor's office profits to the tune of hundreds of thousands of dollars over the years, [and] millions of dollars in profits that go right back into . . . making the prosecutor's office have things to make the prosecutor[']s occupation better." Yet, not only prosecutors fall within the sights of her attack. Allegedly, "[p]rofits from forfeiture cases go into the county general revenue fund, and the county general revenue fund is where the Judge's office also obtains budget consideration for things such as additional staff, additional equipment and resources, travel reimbursement, etc." Even "[t]he Appellate Courts . . . profit from increased

7

revenue," in her estimation. And, because of this, the forfeiture statute, Texas Code of Criminal Procedure art. 59.01 *et seq.*, purportedly transgresses the limits of due process.

Missing from her diatribe, however, is citation to factual support underlying her contentions. The same is true concerning citation to legal authority, controlling or merely analogous.[3] Appellant says little about the legal parameters of due process. Nor does she attempt to explain why those parameters encompass the Texas forfeiture statute. Instead, her writing appears to suggest little more than a personal viewpoint on the supposed inequities of historic and current forfeitures.

That legal authority exists touching upon aspects of her complaint cannot be denied. *See, e.g.*, *Ward v. Monroeville*, 409 U.S. 57, 59, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972) (acknowledging precedent holding that it violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process to subject her liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion adverse to the defendant).[4] But, this Court, as opposed to appellant, recalled it. From appellant, we encounter silence when it comes to whether or how such existing authority applies to the situation at bar. And, most importantly, our

---

[3] Allusion is made to various United States Supreme Court opinions. *See, e.g.*, *Timbs v. Indiana*, ___ U.S. ___, ___, 139 S. Ct. 682, 203 L. Ed. 2d 11 (2019) (involving whether the "Excessive Fines Clause" found in the 8th Amendment to the United States Constitution applies to the States via the 14th Amendment); *Honeycutt v. United States,* ___ U.S. ___, 137 S. Ct. 1626, 198 L. Ed. 2d 73 (2017) (describing the issue as "whether, under [21 U.S.C.] § 853, a defendant may be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire"); *Leonard v. Texas*, ___ U.S. ___, 137 S. Ct. 847, 197 L. Ed. 2d 474 (2017) (Thomas, J., concurring) (discussing one justice's views on whether the Due Process Clause requires a State to carry its burden under a civil forfeiture statute by clear and convincing evidence). No effort is made by appellant, though, to explain how they pertain to or control the dispute at bar.

[4] At first blush, one could question whether appellant's attenuated trickle-down theory would fall within the test mentioned in *Ward*. In view of appellant's lack of attention to that, though, we do not address that now.

obligation to adjudicate appellate disputes does not encompass an obligation to contrive appellant's argument for her.

Simply put, an appellant's contention that the forfeiture statute is unconstitutional is a serious matter. Our rules of appellate procedure obligate her to present more than a skeleton bereft of flesh, bereft of analysis and citation to the evidentiary record and controlling legal authority on such an important topic. That was not done here. Consequently, appellant waived her constitutional attack upon article 59 of the Texas Code of Criminal Procedure.

Having overruled both issues presented on appeal, we affirm the trial court's summary judgment.


Brian Quinn
Chief Justice