NO. 07-08-00367-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 21, 2010

JON JONES, APPELLANT

v.

AMADO Z. MORALES, APPELLEE

FROM THE 110TH DISTRICT COURT OF FLOYD COUNTY;

NO. 9894; HONORABLE H. BRYAN POFF, JR., JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

In this appeal of an election contest, appellant and contestee below Jon Jones asks us to reverse the trial court's judgment finding appellee and contestant below Amado Morales the winner of the November 2006 general election for Floyd County commissioner precinct four, and render judgment declaring Jones the winner. Finding the trial court did not abuse its discretion in adjudging Morales the winner, we will affirm its judgment.

## Background

The outcome of the commissioner's race between Jones and Morales was close. The initial canvas showed Jones the winner by three votes. Morales requested a recount which tallied Jones the winner by four votes. Morales then filed the underlying election contest in December 2006. According to Morales's petition, the county's early voting ballot board[1] wrongly rejected "5-7 mail-in ballots." The issues for Morales at trial devolved to whether the ballot board incorrectly rejected the mail-in ballots of voters Maldonado, De Los Santos, Castillo, Olivo, and Vargas[2] and whether two voters were wrongly denied precinct four ballots. Each of the uncounted voters voted for Morales. Trial began in June 2008 but was recessed until September because Vargas was hospitalized. Judgment was for Morales as the court concluded the votes of the uncounted voters should have been included in the total and this omission materially affected the outcome of the election. Thus Morales was adjudged winner of the election by one vote. This appeal followed.

---

[1] The Election Code requires creation of an early voting ballot board and empowers it to screen early voting ballots. *See* Tex. Elec. Code Ann. §§ 87.001-.005 & 87.041 (Vernon 2010). We will cite the current version of the Election Code unless otherwise indicated.

[2] In its findings of fact and conclusions of law, the trial court collectively identified Maldonado, De Los Santos, Castillo, Olivo, and Vargas as "the uncounted voters." We also refer to them collectively in that manner.

Issue

Jones argues the trial court abused its discretion by rendering judgment for Morales. Through multiple sub-issues he contends the uncounted voters did not properly execute documents required for voting by mail, Maldonado received improper assistance voting by mail, the ballot of De Los Santos was improperly transported to the early voting clerk, and his motion to dismiss for want of prosecution was improperly denied. By cross-issue, Morales argues the trial court abused its discretion by failing to find two voters were improperly denied precinct four ballots.

Analysis

Appellate Jurisdiction

In the trial court, Jones filed a motion to dismiss the case for want of prosecution. The clerk's record contains an "Order Granting Motion to Dismiss" signed December 20, 2007, a judgment signed September 19, 2008, and Jones's notice of appeal filed on September 19. If the case was dismissed for want of prosecution on December 20, we lack appellate jurisdiction. *See* Tex. R. App. P. 26.1 & 26.3. Therefore, on our own motion, we first consider our jurisdiction of this appeal. *See Buffalo Royalty Corp. v. Enron Corp.,* 906 S.W.2d 275, 277 (Tex.App.–Amarillo 1995, no writ) (appellate court required to consider its jurisdiction *sua sponte* if necessary).

In the course of discovery, Morales filed a motion to compel the county clerk to produce the ballots rejected by the ballot board. Jones responded with a motion to dismiss the case for want of prosecution. On December 20, 2007, the trial court heard

3

the motion. The court was presented an order containing language granting the motion and ordering that Morales take nothing. By pen and ink, the trial court struck out the word "granted" and wrote "denied" immediately above. But the court left undisturbed the sentence ordering that Morales take nothing, and signed the order. Thus the order purports to deny the motion to dismiss but concludes with language ordering the relief requested. Given this conflict in the order's language, we must determine whether the order is ambiguous and if so the intention of the trial court.

"The same rules of interpretation apply in construing the meaning of court orders as in ascertaining the meaning of other written instruments." *Lal v. Harris Methodist Fort Worth,* 230 S.W.3d 468, 474 (Tex.App.–Fort Worth 2007, no pet.). A court may consider on its own motion whether a document is ambiguous. *In re Golden Peanut Co., LLC,* 269 S.W.3d 302, 313-14 (Tex.App.–Eastland 2008, orig. proceeding). Whether a document is ambiguous is a question of law. *Tuthill v. Southwestern Public Service Co.,* 614 S.W.2d 205, 211 (Tex.Civ.App.–Amarillo 1981, writ ref'd n.r.e.). A document is not ambiguous if as worded it can be given a definite or certain legal meaning. *Kelly-Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex. 1998). But a document is ambiguous if its meaning is reasonably susceptible to two or more reasonable interpretations. *Id.*

We find the December 20 order ambiguous. On one hand, it denies the underlying motion to dismiss for want of prosecution. But on the other, it contains language finally disposing of the case.

Further, because the order was not produced following a conventional trial on the merits, we do not presume its finality. *Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 199 (Tex. 2001). Rather, following summary disposition when finality is not clear we look to the order and the record to determine finality. *Id.* at 195. And from the record our inquiry is satisfied. At the hearing on the motion to dismiss, after the parties' presentations and in open court, the trial judge orally rendered an order denying Jones's motion to dismiss. It then took up the motion to compel, which was granted by an order signed some twenty days later. On April 25, the court set the case for trial and trial began on June 24. The case proceeded to final judgment without recorded comment by the court or the parties regarding the effect of the December 20 order. The only reasonable interpretation of the December 20 order is denial of Jones's motion to dismiss. The notice of appeal Jones filed following final judgment was timely. We have jurisdiction of the appeal.

Whether Voting Irregularities Materially Affected the Election Results.

"To overturn an election, the contestant has the burden of proving by clear and convincing evidence that voting irregularities materially affected the election results." *Tiller v. Martinez,* 974 S.W.2d 769, 772 (Tex.App.–San Antonio 1998, pet. dism'd w.o.j.) (citing *Alvarez v. Espinoza,* 844 S.W.2d 238, 242 (Tex.App.–San Antonio 1992, writ dism'd w.o.j.), and *Guerra v. Garza,* 865 S.W.2d 573, 576 (Tex.App.–Corpus Christi 1993, writ dism'd w.o.j.)). "To prove that the outcome was materially affected, the contestant must show that illegal votes were counted or an election official prevented eligible voters from voting, failed to count legal votes, or engaged in other fraud, illegal

5

conduct, or mistake." *Tiller,* 974 S.W.2d at 772 (citing Tex. Elec. Code Ann. § 221.003 (Vernon 1986) and *Alvarez,* 844 S.W.2d at 242).

"The standard of review in an appeal from a judgment in an election contest is a determination whether the trial court abused its discretion." *Tiller,* 974 S.W.2d at 772. A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985).

The sufficiency of evidence supporting a trial court's finding of fact may be a relevant factor in determining whether the court abused its discretion. *In re C.J.H.*, 79 S.W.3d 698, 702 (Tex.App.–Fort Worth 2002, no pet.) (citing *Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)). In a non-jury case, when the appellate record includes both findings of fact and conclusions of law and a reporter's record, we review the sufficiency of the evidence under the same standards applied in cases tried by jury. *Slusher v. Streater,* 896 S.W.2d 239, 241 (Tex.App.–Houston [1st Dist.] 1995, no writ). In reviewing the legal sufficiency of the evidence under a clear and convincing standard, we look at all the evidence, in the light most favorable to the judgment, to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d 256, 265-66 (Tex. 2002). We presume that the trier of fact resolved disputed facts in favor of its findings if a reasonable trier of fact could do so. *Id.* We disregard any contrary evidence if a reasonable trier of fact could do so, but we do not disregard undisputed facts. *In re J.L.,* 163 S.W.3d 79, 85 (Tex. 2005).

6

*Irregularity of Signatures*

Voting early by mail requires a voter to apply in writing for a ballot and then mail the completed ballot to the election clerk in an official carrier envelope bearing the signature of the voter. *Alvarez,* 844 S.W.2d at 244; Tex. Elec. Code Ann. § 86.005(c) (Vernon 2010). The ballot board may accept a ballot voted early by mail "only if: . . . neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness; . . . ." Tex. Elec. Code Ann. § 87.041(b)(2) (Vernon 2010). The law thus requires those who vote early by mail to sign both the application and the carrier envelope. *Alvarez,* 844 S.W.2d at 245.

When a contestant challenges a ballot board's rejection of a ballot, the ballot board is presumed to have acted properly and it is the contestant's burden to show by clear and convincing evidence the board erred. *Alvarez,* 844 S.W.2d at 244-45; *see Tiller,* 974 S.W.2d at 773-74 (when contestant contends election judge rejected votes that should have been accepted, rule has long presumed that each rejected ballot was cast by an illegal voter). Discharging this burden requires the contestant to show the challenged voter was legally qualified to vote, and the ballot was properly cast.[3] *Tiller,* 974 S.W.2d at 774; *Alvarez,* 844 S.W.2d at 244. But if a ballot was rejected for a

---

[3] A "qualified voter" is a voter who: (1) is age 18 years or older; (2) is a United States citizen; (3) has not been finally adjudged by a court exercising probate jurisdiction totally mentally incapacitated or partially mentally incapacitated without the right to vote; (4) has not been finally convicted of a felony, or if so has satisfied enumerated requirements; (5) is a resident of this state; and (6) is a registered voter. Tex. Elec. Code Ann. § 11.002 (Vernon 2010).

7

reason unrelated to the voter's qualification, it is unnecessary for the contestant to prove the qualification of the challenged voter.[4]  *Tiller,* 974 S.W.2d at 774; *Alvarez,* 844 S.W.2d at 244.

The ballot board acts on the basis of the signatures before it.  *Alvarez,* 844 S.W.2d at 245.  The Election Code does not require the board to make inquiry of voters whose signatures do not match.  *Id.*  But in an election contest based on ballots the ballot board rejected on the ground of signature deficiency, the district court may receive oral testimony from the voter or other witnesses regarding the similarity of the signatures and may compare the signatures.  *Tiller,* 974 S.W.2d at 777; *Alvarez,* 844 S.W.2d at 245.  The court may rely on its own comparison without the aid of expert testimony.  *Tiller,* 974 S.W.2d at 777; *Alvarez,* 844 S.W.2d at 245.

Here, each of the uncounted voters testified.  Each averred they signed the application and carrier envelope, or in the case of Maldonado, marked the required signatory lines with a witnessed "X."  As the trial court candidly told counsel at closing argument, the question of signature legitimacy presented a classic fact issue between the uncounted voters' testimony and Jones's expert who found a signature discrepancy in the case of each uncounted voter.  The trial court resolved the issue in favor of

---

[4] On appeal, Jones argues Morales failed to proffer clear and convincing proof that the uncounted voters were legally qualified to vote.  However, there is no record indication that this issue was raised and joined for trial.  The record does not indicate the ballot board rejected any uncounted voter for lack of qualification.  The trial court and parties tried the case with the burden of proof allocated to Morales to establish that each of the uncounted voters signed their mail-in ballot application and ballot carrier envelope.

8

Morales. In so doing, it was the exclusive judge of the credibility of the witnesses, and the weight to be given their testimony. *City of Keller v. Wilson,* 168 S.W.3d 802, 819 (Tex. 2005). It observed and was free to take into account the candor and demeanor of the witnesses. It also was free to make its own evaluation of the signatures on the voters' applications and ballot envelopes in light of the testimony. *Tiller,* 974 S.W.2d at 777; *Alvarez,* 844 S.W.2d at 245 During its oral rendition of judgment, the trial court noted that "due to their infirmities," he doubted most of the uncounted voters "would sign their signature[s] the same twice." Implicit in the judgment of the trial court is the determination that each of the uncounted voters properly signed the application for ballot by mail and carrier envelope. The court heard testimony that, if believed, permitted it to form a firm belief or conviction that its finding was true. The law does not allow us to disturb the trial court's credibility determinations. *City of Keller,* 168 S.W.3d at 819. We conclude the trial court did not abuse its discretion in sustaining Morales's contest as to the votes of the uncounted voters.

*Improper Voter Assistance*

We turn now to Jones's affirmative claim that illegal ballots were cast for Morales and these ballots should be excluded from the final count. Jones argues that Maldonado received illegal assistance from Morales.

A voter who is unable to write or see due to a physical disability or who is unable to read the language of the ballot is eligible for assistance marking the ballot. Tex. Elec. Code Ann. §§ 64.031, 86.010(a) (Vernon 2010). A voter may be assisted in marking the ballot by a person of the voter's selection other than the voter's employer, an agent of

9

the voter's employer, or an officer or agent of a labor union to which the voter belongs. Tex. Elec. Code Ann. § 64.032(c) (Vernon 2010). A person voting by mail may receive no greater assistance than a person voting at a polling place. Tex. Elec. Code Ann. § 86.010(b) (Vernon 2010). For purposes of § 86.010, assisting a voter with a mail-in ballot, in the presence of the ballot or carrier envelope, includes reading the ballot to the voter, directing the voter to read the ballot, marking the ballot, or directing the voter to mark the ballot.[5] Tex. Elec. Code Ann. § 64.0321 (Vernon 2010). A person assisting the voter to prepare a ballot must provide his name, address and signature on the carrier envelope. Tex. Elec. Code Ann. § 86.013(c) (Vernon 2010). The assistant must also sign the oath prescribed in § 64.034 included on the carrier envelope. Tex. Elec. Code Ann. §§ 86.010(c), 86.013(f) (Vernon 2010).

In its findings of fact, the trial court found each uncounted voter "was either of advanced age or exhibited an obvious impediment or infirmity." Each testified briefly. Maldonado, age eighty-eight, testified through an interpreter. Maldonado testified she signed the application for ballot by mail and the ballot with an "X." Her son witnessed her sign the application and her daughter witnessed her sign the ballot. On cross-examination, Maldonado was uncertain whether Morales or one of Maldonado's

---

[5] Maldonado's carrier envelope contains the following printed oath for a person assisting the voter:

> I swear (or affirm) that I will not suggest by word, sign, or gesture how the voter shall vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidate (sic) and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs.

daughters helped her complete the application. When asked what role Morales played in assisting her to vote she responded, "Well, he–the role is that he came to my house, and my daughters were there and they helped me, but he also helped me." Neither party questioned Maldonado further and Morales did not testify. Thus it is impossible to ascertain what assistance Morales provided Maldonado. Maldonado's carrier envelope does not identify Morales as her assistant.

Jones points out that in *Tiller* the court found the trial court abused its discretion by validating the ballot of assisted voter Trevino whose carrier envelope certificate was not properly executed. 974 S.W.2d at 775. According to *Tiller*, "If the person assisting the voter fails to sign the carrier envelope certificate, the ballot shall not be counted. *See* Tex. Elec. Code Ann. §§ 86.005, 86.010(b), 86.012, 86.013(c) (Vernon Supp. 1998)." *Tiller,* 974 S.W.2d at 775. After review of the cited sections of the Election Code, including the 2003 amendments to those sections, we find ourselves in disagreement on this point with our sister court. Neither in the cited sections nor elsewhere in the Election Code can we see a legislative determination that a failure of a voter's assistant to complete the required information on the carrier envelope requires rejection of the voter's ballot. As noted, statute expressly provides that the ballot of a voter who is assisted in violation of subsections (a) or (b) of § 86.010 may not be counted, but the legislature has not disqualified the ballot of a person whose assistant fails to sign the oath, or provide his name and address, on the carrier envelope. Tex. Elec. Code Ann. § 86.010(d) (Vernon 2010).

11

Long-settled rules of statutory construction restrain us from reading words into the language chosen by the legislature:

> [E]very word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose. This rule complements another general statutory construction principle that courts should not insert words in a statute except to give effect to clear legislative intent.

*In re Bell,* 91 S.W.3d 784, 790 (Tex. 2002) (citations omitted). *See Cameron v. Terrel & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex. 1981) (additional language is read into a statute "only when it is necessary to give effect to the clear legislative intent"). The legislature expressly has provided that some actions require a voter's ballot to be excluded, and we decline to add to the legislature's expressed list.

That it was Morales, a candidate, who provided some assistance to Maldonado does not require a different conclusion. The legislature has prescribed the class of individuals a voter may not select to assist the voter in marking the ballot, and the excluded individuals does not include a candidate. *See* § 64.032(c) (providing on voter's request, voter may be assisted by any person selected by voter other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs); § 86.010(a) (limiting persons who may assist voter casting ballot by mail to those provided by § 64.032(c)).

Our review of the Election Code requires the conclusion Morales's failure to provide the required information and sign on the carrier envelope does not alone

12

exclude Maldonado's ballot from the count of votes cast. Maldonado was entitled to no greater assistance than had she voted at the polling place. Tex. Elec. Code Ann. § 86.010(b) (Vernon 2010). The trial court did not abuse its discretion by not rejecting Maldonado's ballot for assertedly improper assistance.

*Improper Transport of Ballot*

Jones next argues the mail-in ballot of uncounted voter De Los Santos was improperly transported to the early voting clerk. Thus, he continues, the trial court abused its discretion in validating the ballot.

On direct examination of De Los Santos, age sixty-seven, the following exchange occurred:

Q.    Did you [cast your vote] by mail-in ballot, sir?

A.    I don't remember. I think I got it in the mail, and then I sign it and someone pick it up, I think. I think that's the way it happened.

A voter voting by mail must place the marked ballot in the official ballot envelope, seal the ballot envelope, place the ballot envelope in the official carrier envelope, seal the carrier envelope, and sign the certificate on the carrier envelope. Tex. Elec. Code Ann. § 86.005(c) (Vernon 2010). A person other than the voter who deposits the carrier envelope in the mail or with a common or contract carrier must provide the person's signature, printed name, and residence address on the reverse side of the envelope. Tex. Elec. Code Ann. § 86.0051 (Vernon 2010). The carrier envelope may be transported and delivered to the early voting clerk only by mail or common or contract

13

carrier.  Tex. Elec. Code Ann. § 86.006(a) (Vernon 2010).  A ballot returned in violation of § 86.006 may not be counted.  *See* Tex. Elec. Code Ann. § 86.006(h) (Vernon 2010).

County Clerk Marilyn Holcomb testified she was overseer of the 2006 general election.  Addressing the procedure applied to mail-in ballots, Holcomb testified that the ballots rejected by the ballot board were each returned by mail.  On this record, we see no abuse of discretion in the trial court's refusal to reject the ballot of De Los Santos for its asserted improper transport.

Motion to Dismiss for Want of Prosecution

Jones next argues the trial court abused its discretion by denying his motion to dismiss the case for want of prosecution.

A trial court is empowered to dismiss a case for want of prosecution either under Texas Rule of Civil Procedure 165a or its inherent power to control its docket.  *Villarreal v. San Antonio Truck & Equip.,* 994 S.W.2d 628, 630 (Tex. 1999).  We review a trial court's ruling on a motion to dismiss for want of prosecution by the abuse of discretion standard.  *MacGregor v. Rich,* 941 S.W.2d 74, 75 (Tex. 1997).

Citing Rule 6 of the Texas Rules of Judicial Administration, Jones argues public policy favors prompt disposition of civil non-jury cases.  In non-jury cases, district court judges "should, so far as reasonably possible, ensure that all" non-family law civil "cases are brought to trial or final disposition . . . [w]ithin 12 months from appearance date."  Tex. R. Jud. Admin. 6(b)(2), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F–Appendix (Vernon Supp. 2009).  According to Rule 1 of the rules of judicial

14

administration, the rules are promulgated pursuant to § 74.024 of the Government Code. *Id.* at Rule 1. Section 74.024 provides "the supreme court may consider the adoption of rules relating to: (1) nonbinding time standards for pleading, discovery, motions, and dispositions; (2) nonbinding dismissal of inactive cases from dockets, if the dismissal is warranted; . . . ." Tex. Gov't Code Ann. § 74.024(c)(1),(2) (Vernon Supp 2009). Thus, the application of Rule 6 is discretionary and non-binding. *See In re S.D.W.,* 811 S.W.2d 739, 746 (Tex.App.–Houston [1st Dist.] 1991, no writ) (juvenile case). Moreover, circumstances may preclude adherence to the standards under especially complex cases or those presenting special circumstances. Tex. R. Jud. Admin. 6(e), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. F–Appendix (Vernon Supp. 2009). Thus, Rule 6 does not fix a bright line demarking the outward limit of a trial court's discretion to control its docket.

In the trial court, Morales argued delay sprang in part from assignment of the case to an appointed judge. But we find no record support for the claim. Rather, the record shows limited pretrial activity. Jones served requests for disclosure with his original answer on December 14, 2006. Morales deposed Holcomb in February 2007 but she refused to produce rejected ballots without an order of the court. In June, Holcomb, her counsel, and counsel for the parties reviewed documents in Holcomb's possession. She again refused to produce the rejected ballots. On December 11, Morales filed a motion to compel production of the rejected ballots. Jones responded and moved for dismissal for want of prosecution under the court's inherent authority. By written response, Morales argued he did not receive advance notice of the trial court's intention to dismiss for want of prosecution and because the contest was not of a

15

primary election or a general or special election requiring a runoff, the Election Code did not require an accelerated schedule. *See* Tex. Elec. Code Ann. § 232.012 (Vernon 2010). At the hearing, the trial court expressed its cognizance of Jones's contention and indicated the case probably should have been brought to trial more quickly. But it resolved the issue in favor of allowing the case to proceed. Jones reurged his motion on the first day of trial and it was again denied.

A trial court abuses its discretion when it acts without reference to any guiding rules or principles, not when it exercises that discretion in a manner different than a reviewing appellate court might. *Urbanczyk v. Urbanczyk,* 278 S.W.3d 829, 836 (Tex.App.–Amarillo 2009, no pet.) (citing *Downer,* 701 S.W.2d at 241-42). Under the standard by which we must review the trial court's decision, we cannot say it abused its discretion by denying Jones's motion to dismiss for want of prosecution.

## Conclusion

Finding the trial court did not abuse its discretion in sustaining Morales's contest and denying Jones's motion to dismiss, we affirm the judgment of the trial court. Because of our disposition, it is unnecessary to consider Morales's cross-issue that two voters were improperly denied precinct four ballots. *See* Tex. R. App. P. 47.1.


James T. Campbell
Justice


16