

**NUMBER 13-24-00336-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**DAVID WHITE,** **Appellant,**

**v.**

**GERARDO "GERRY" LOZANO,** **Appellee.**

---

**ON APPEAL FROM THE 430TH DISTRICT COURT**
**OF HIDALGO COUNTY, TEXAS**

---

## OPINION

**Before Justices Silva, West, and Fonseca**
**Opinion by Justice Silva**

Appellant David White challenges the trial court's judgment reversing the election results for City Commissioner Place 4 of the Edinburg City Council in Edinburg, Texas. In five issues, which we reorganize and renumber, White argues that the trial court abused its discretion when it (1) permitted appellee Gerardo "Gerry" Lozano to reopen his case-in-chief to question voters regarding who they voted for; (2) "declared [twenty-five] voters

voted illegally because they received technical or minor assistance when they were entitled to such assistance"; (3) "invalidated [the votes of seventeen voters] who received technical 'assistance'"; (4) "declared [Lozano] the 'winner'"; and (5) "applied Texas Election Code [§] 64.031 in disqualifying [seventeen] voters' vote[s] in violation of . . . the Voting Right[s] Act of 1965." We affirm.

## I.    BACKGROUND

In a municipal election held on November 7, 2023, White was elected to the Edinburg City Council as City Commissioner for Place 4. White defeated Lozano by only ten votes, with a total of 3,334 votes cast for White, and 3,324 votes cast for Lozano.

On December 27, 2023, Lozano filed an original petition contesting the election results, asserting that several votes were illegally cast based on violations of the Texas Election Code. Specifically, Lozano alleged that votes were illegally cast by voters who were registered to vote at an address that was not a residence and not their residence; voters received assistance to vote despite being ineligible for assistance; the "illegal assistance included encouraging the voter how to vote and/or even pressuring or coercing votes"; and several mail-in ballots were illegal due to "numerous violations of various requirements" for mail-in ballots. Lozano asserted that "[b]ecause the number of illegal votes cast exceeds the difference in the total votes cast for [Lozano] and those cast for [White], the Court cannot ascertain the true outcome of the election and . . . must declare the election void and order a new election."

On January 25, 2024, White filed his original answer and special exceptions. White specially excepted and requested that Lozano be ordered to plead the names and home addresses of: (1) the voters whom Lozano alleged were registered at an address other

2

than their residence; (2) the voters whom Lozano alleged were illegally assisted or coerced, as well as the names of the assistants or coercing individuals; and (3) the voters whom he alleged were ineligible, as well as the reasons for their ineligibility. The trial court did not conduct a hearing on White's special exceptions.

On February 23, 2024, White filed his responses to Lozano's request for disclosures and admitted that he was "unaware of any illegalities." On April 22, 2024, White filed a traditional and no-evidence motion for summary judgment. White argued that "[s]ufficient time for discovery ha[d] passed[; b]oth litigants have conduct[ed] discovery via discovery requests and depositions[; w]ritten discovery responses and . . . document[s] have been exchanged"; and "[a] total of 30 depositions have been taken." On April 25, 2025, the trial court signed an order denying White's motions for summary judgment "[b]ased on judicial economy and the interest of justice." The court stated, "that [thirty] depositions have been taken on the case through non-stenographic means via video recording by agreement of the parties and that the depositions have not been transcribed."

On May 16, 2024, the parties entered into a Rule 11 agreement that certain documents were admissible as evidence, including: "combination forms" containing polling lists and signature rosters for mail-in ballot early voting, in-person early voting, and in-person election day voting; voter registration applications for each voter; mail-in ballots, early voting, and election day ballots that were counted; and the official recount results and final canvass.

On May 17, 2024, Lozano amended his petition. The amended petition additionally alleged that "voters who were physically able to enter a polling place without personal assistance and without a likelihood of injuring the voter's health, and who made no

3

request to vote curbside, were unlawfully allowed to engage in curbside voting." Lozano further alleged that White, "his campaign[,] and his agents," engaged in fraud by conspiring to monitor, influence, and pressure voters to vote for him by unlawfully exploiting the voter assistance laws.

The bench trial spanned four days from May 28 through May 31, 2024. On the first day of the bench trial, after Lozano provided an opening statement, the following exchange occurred:

| | |
|---|---|
| THE COURT: | Is there any remedy . . . to declare that the election was void as to that office and to call for another election? |
| [Lozano's counsel]: | Yeah. If you look at [Texas Election Code §] 221.012B, the tribunal shall declare the election void if it cannot ascertain the true outcome of the election. So the way that works, essentially, is that even though conceivably it might have affected other elections, since the only candidate that is challenging the results under the way our judicial system works, only he can bring this issue up and then you can only disqualify—you can only find that if you determine that the illegal votes that were cast and the number of illegal votes that were cast exceed or are greater than the margin of victory, the trial court can then declare the election void without ever inquiring as to the candidates for whom the illegal votes were cast. So the point is that if you find that there are more than 10 or more illegal votes cast in this particular election, then you can declare the results of this election void and order a new election. |
| . . . . | |
| THE COURT: | If there is evidence that a voter cast an illegal vote, can that voter be compelled to disclose how he or she voted[?] |

4

| [Lozano's counsel]: | Yes. |
| THE COURT: | So then the only remedy is not that there be a whole new election, but if the Court can determine and ascertain how the votes were cast by the illegal voters, then the Court may be able to declare the winner. |
| [Lozano's counsel]: | If the Court were to find that the number of illegal votes that were cast—that the illegal vote that was cast for Mr. White, in this instance, and that totals up more than 10 votes, let's say 11 votes. |
| THE COURT: | Those can be subtracted out. |
| [Lozano's counsel]: | Huh? |
| THE COURT: | Those can be subtracted out. |
| [Lozano's counsel]: | Yeah, that's right. And you just then make a new tally and you determine. |

White's counsel remained silent during this exchange. He then provided a short opening statement to the trial court, and the parties subsequently presented evidence, live witness testimony, and video deposition testimony. We narrow our background discussion to the five voters who testified in person, were disqualified because they were not eligible for assistance, and voted for White.[1]

First, Erasmo Cantu testified that he could read and write the English language. He stated that he was picked up to vote. When he arrived at the polling location, he was provided a tablet and voted inside the vehicle. Cantu admitted that he could have walked into the polling place to vote but did not. He also admitted that he walked to the courtroom

---

[1] As discussed more fully below, the content of the video deposition testimony is not included in the appellate record; White does not challenge the court's rulings invalidating votes for reasons other than being ineligible for assistance; and the trial court properly considered testimony as to whom the ineligible voters voted for.

to testify.

Second, Marlen Pulido Chapa was called to testify, and the following colloquy occurred:

[Lozano's counsel]:        I think this next witness is severely challenged, okay? And she's with her mother[, Yolanda Pulido Chapa]. So I don't know how to do this whether to bring her mother up next to her or— the mother is gonna start talking and she's— she's voted and that's part of what we've been— what you just now saw. This is the same thing, but in a higher level.

. . . .

THE COURT:        Before the witnesses come up, you gave me a listing of the depositions as it's—of the witnesses at the deposition—

[White's counsel]:        Right.

THE COURT:        —but not a separate list of the witnesses for today.

[White's counsel]:        No. I was asking if—I don't recall this person being listed as a witness or someone they were objecting to, Judge. Her name was mentioned in a deposition of her mother . . . .

. . . .

[White's counsel]:        Again, I don't know that they're—they've listed this person as someone they had an objection to.

. . . .

[Lozano's Counsel]:        Well, in all fairness to us, Your Honor, what happened here—so that the Court will know is that when we took the deposition of the mother, we found out for the first time that she had a daughter that was challenged and that—that person had also been assisted on the same day as she was assisted. So . . . there's a videotape

6

deposition of her that we're going to be offering. But we're going to recall her right now with her daughter and her daughter I don't think is able to communicate.

. . . .

| | |
|---|---|
| THE COURT: | Would you . . . raise your right hand, please? |
| [Lozano's counsel]: | The other right? (The witness was sworn) |
| [Yolanda]: | The truth, yes. |
| THE COURT: | And can I get an answer from your daughter? |
| [Yolanda]: | I'm gonna speak for her. |
| [White's counsel]: | You know, we'll just excuse [Marlen], Judge. |
| [Lozano's counsel]: | We have no objection to that, Judge. |
| THE COURT: | Very well. |

. . . .

| | |
|---|---|
| [Lozano's counsel]: | [W]hat [White's counsel] is . . . agreeing to is that [Marlen] is disqualified as a voter. Her vote was . . . unlawful and therefore disqualified. |
| [White's counsel]: | After this election. I'm not doing anything beyond this. |
| [Lozano's counsel]: | Just on this election. |
| THE COURT: | And that is for the mother or for— |
| [Lozano's counsel]: | No, just for Marlen . . . . |
| THE COURT: | Okay. So Marlen Pulido Chapa is disqualified by agreement. |

Third, Yolanda, Marlen's mother, testified that she was picked up because she needed assistance to vote. When she arrived at the polling location, she was provided a

7

tablet and voted inside the vehicle. Yolanda admitted that she was able to walk inside the polling place but could not leave her daughter unattended. Lozano's counsel informed her that she could have taken her daughter with her to vote. Yolanda responded that "[she] didn't know" and was "not prepared for that." She admitted that she walked into the courtroom with her daughter for the hearing.

Fourth, Lorena De Leon testified that she along with her aunt Irene Canales were picked up to vote. De Leon stated that she could read and write the English language. She admitted that her aunt is "challenged," "doesn't know what's going on," and cannot read. When she arrived at the polling location, she was provided a tablet and voted inside the vehicle. She also admitted that she filled out the ballot for her aunt. De Leon testified that she is "not handicapped" and was capable of walking into the polling place to vote. After her testimony, the following colloquy occurred:

| [Lozano's counsel]: | Your Honor, so I think that by stipulation at the time of the deposition, we agreed, [White's counsel] and I, that Irene Canales unlawfully voted and was disqualified . . . . |
| --- | --- |
| [White's counsel]: | The stipulation is we agreed to excuse her, Judge, and that she shouldn't have voted. I'm not going to suggest anything more than that. |
| . . . . | |
| THE COURT: | Very well. I will disqualify the votes of Irene Canales and Lorena De Leon. |

Fifth, Emiliana Borja Baldovinos testified that she could read and write the Spanish language. She further testified that she was picked up to vote. When she arrived at the polling location, she was provided a tablet, and someone assisted her in turning on the tablet. Baldovinos stated that although she was able to walk into the polling place, she

8

voted while sitting in the vehicle. She admitted that she drove herself to the courthouse for the hearing.

After presentation of evidence on May 29, the parties rested and the court orally pronounced that twenty-six votes cast in the November 7, 2023 election were illegal. Thereafter, Lozano requested to reopen the case and allow him to "subpoena some of [the disqualified] voters to come in and ask them who they voted for." Lozano suggested that if the trial court allowed him to do so, it "would save an enormous amount of money to the City of Edinburg in conducting another election." The court pronounced that it would allow Lozano to reopen the case, but directed him to issue subpoenas by May 30, and stated that the trial would resume on May 31.[2] White did not object to the trial court's ruling.

On May 30, Lozano filed an "emergency motion" to secure the testimony of a disqualified voter who could not comply with "the trial subpoena served upon him since he needed to obtain dialysis treatment tomorrow at 9:00 a[.]m." Lozano requested that the trial court permit this voter to testify via Zoom. On the same day, the court conducted a hearing over Zoom and granted Lozano's motion. The court then asked White if he had any objection. The following exchange occurred:

| [White's counsel]: | Yes, Judge, I mean, notice has been really short, Judge. |
| THE COURT: | Well— |
| [White's counsel]: | I just want it on the record, Judge. I do have |

---

[2] Lozano asked for a ten-to-fourteen-day recess before resumption of the bench trial but the request was rejected by the trial court. The court explained its urgency in resuming the bench trial in such a short time: "I'm more concerned about—based on evidence that I've heard about an outside influence of any of the disqualified voters as to . . . what they should say. So the more time you give, the more time there is to corrupt the evidence."

|  |  |
|---|---|
|  | another, more specific objection, Judge. |
| THE COURT: | All right. |
| [White's counsel]: | [T]here are no pleadings to support this Court having [s]ua [s]ponte order[ed] that these people show up for court tomorrow. It came as a complete surprise to us. I was—I could not reasonably anticipate that the Court was going to take that action. There's no pleadings on file, Judge. All they were requesting, and we were under the impression that this would go forward, this case, only on what they were requesting and that was a new [election], Judge. We would have prepared a different defense, had it been a situation where they were asking for a new [election], then we would have done discovery related to . . . the fact that . . . both campaigns generally go out and bring people to the voting place. We were not informed that they were requesting that they were going to seek that [Lozano] be declared the winner. So, as I indicated to the Court, we would have had a different defense. I believe it's a complete surprise, and it's detrimental to the defense of our case in this case. |
| THE COURT: | Very well, the objection is overruled. |

The court proceeded to hear the live testimony of two disqualified voters, both of whom testified that they voted for Lozano.

On May 31, the trial court heard live testimony of six voters whose votes the trial court concluded were illegal. The testimony regarded whether these voters had voted for White or Lozano. After these voters testified, the court orally pronounced its ruling that fourteen of the twenty-six illegal votes had been cast for White. The trial court then signed its judgment, holding

> that it could ascertain the true outcome of the election, that the number of
> illegal votes which were cast for [White] exceed [White's] ten vote margin of

10

victory in said election, that by subtracting the illegal votes from the official total for [White], [Lozano] obtained more votes in said election than [White], and the court hereby declares [Lozano], the winner of the November 7, 2023, City of Edinburg, Texas election for City Commissioner Place 4.

On June 17, 2024, the trial court issued its twenty-four page findings of fact and conclusions of law. The trial court found that White asserted no challenge to the 3,324 votes casted for Lozano. In addition, the trial court found that twenty-five[3] votes were illegal for various violations of the Texas Election Code, that seventeen of these illegal votes had been cast for White, and that it could not ascertain for whom eight of the illegal votes were cast. In particular, the court found that ten votes were illegal because the voters engaged in "curbside" voting despite being physically able to enter the building where the polling place was located. *See* TEX. ELEC. CODE ANN. §§ 43.031(b); 64.009. The trial court also found that nineteen of the votes were illegal because the voters received assistance to vote despite being ineligible for assistance because of their ability to read or write in the English and Spanish languages. *See id.* §§ 64.031, 64.0321, 64.037. Fourteen of these nineteen illegally assisted votes were cast for White. The court subtracted the seventeen illegal votes for White from the canvass vote, which resulted in the following revised results: Lozano, 3,324 votes; White, 3,317 votes. The trial court thus declared Lozano to be the winner of the November 7, 2023 election.

---

[3] In its findings of facts and conclusions of law, the trial court explained:

The Court recognizes that the Court's findings of the number of [illegal] votes today differs from those pronounced at the conclusion of the trial. During its pronouncement, the Court inadvertently listed two or three voters twice and overlooked [three] additional voters whose votes were disqualified and who voted for White. The Court has reviewed, and reviewed again, its notes of the testimony of the witnesses and the exhibits admitted into evidence to determine the accurate count. The Court is satisfied that the count of the total [illegal] votes and of the [illegal] votes for [White] stated in these Findings of Fact and Conclusions of Law are accurate. Although the margin of victory for [Lozano] has changed, the result remains the same.

White filed a motion for new trial, which was denied by the trial court. This appeal followed.

## II.  REOPENING THE CASE

In his first issue, White argues that the trial court abused its discretion when it "sua sponte allowed/permitted/instructed" Lozano to reopen the case after both parties rested for the purpose of questioning the disqualified voters on whom they voted for.

Assuming White's objection to reopen the case was timely, we first note that the trial court's pronouncement that it was permitting Lozano to reopen the case was not sua sponte but rather made in response to Lozano's request to reopen the case. Furthermore, Texas Rule of Civil Procedure 270 provides that a trial court may permit additional evidence to be offered at any time when it clearly appears necessary to the administration of justice. TEX. R. CIV. P. 270. The decision to reopen the evidence is within the sound discretion of the trial court, and the trial court should liberally exercise its discretion "in the interest of justice so that all parties can fully develop their case." *See Holden v. Holden*, 456 S.W.3d 642, 648 (Tex. App.—Tyler 2015, no pet.). In an election contest, "[i]f the trial court can determine the candidate for whom an illegal vote was cast, it must subtract that vote from the candidate's official total." *Medlin v. King*, 705 S.W.3d 267, 280 (Tex. App.—El Paso 2024, pet. denied) (citing TEX. ELEC. CODE ANN. § 221.011)). "And if the trial court can determine the true outcome of the election after following this procedure, it must declare the outcome." *Id.* (citing *Slusher v. Streater*, 896 S.W.2d 239, 241 (Tex. App.—Houston [1st Dist.] 1995, no writ)); *see* TEX. ELEC. CODE ANN. § 221.012. Given this authority, we conclude it was within the trial court's sound discretion to reopen the case to permit the questioning of disqualified voters regarding whom they voted for. *See Medlin*,

12

705 S.W.3d at 280; *Holden*, 456 S.W.3d at 648.

White also asserts that the trial court's action "came as a complete surprise" because Lozano "had no pleadings requesting he be declared the 'winner'" of the November 7, 2023 election, citing only *Cearley v. Cearley*, 331 S.W.2d 510 (Tex. App.—Dallas 1960, no writ).[4] White neither explains the relevance of *Cearley*—a case involving a suit for dissolution of an alleged partnership—to his argument on appeal nor applies *Cearley* to the particular facts of his case. *See Rubsamen v. Wackman*, 322 S.W.3d 745, 746 (Tex. App.—El Paso 2010, no pet.) (noting the burden is on the appellant "to discuss [his] assertions of error, and we have no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error"). Therefore, we conclude White has inadequately briefed this assertion. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). We overrule White's first issue.

### III. ELECTION CONTEST

In his second, third, and fourth issues, White argues that the trial court abused its discretion when it "declared [twenty-five] voters voted illegally because they received technical or minor assistance when they were entitled to such assistance"; "invalidated

---

[4] We note that the Texas Election Code provides that "[a] voter who cast an illegal vote may be compelled, after the illegality has been established to the satisfaction of the [trial court] hearing the contest, to disclose the name of the candidate for whom the voter voted or how the voter voted on a measure if the issue is relevant to the election contest." TEX. ELEC. CODE ANN. § 221.009. The Election Code requires the trial court to subtract illegal votes cast from a candidate's total if it can determine for whom an illegal vote was cast. *See Id*. § 221.011. In addition," if the [trial court] . . . can ascertain the true outcome of the election, [it] *shall* declare the outcome." *Id.* § 221.012(a) (emphasis added). If the trial court cannot ascertain the true outcome of the election, it "*shall* declare the election void." *Id.* § 221.012(b) (emphasis added). As shown above, the trial court and Lozano's counsel discussed these provisions of the Election Code during the bench trial, in White's presence, after Lozano provided his opening statement.

13

[the votes of seventeen voters] who received technical 'assistance'"; and "declared [Lozano] the 'winner.'" White raises evidentiary sufficiency challenges to the trial court's findings as part of his argument that the trial court abused its discretion. We address these issues together.

## A.    Standard of Review and Applicable Law

"The purpose of an election contest is to determine whether the outcome of an election is correct." *Rodriguez v. Rangel*, 679 S.W.3d 890, 903 (Tex. App.—San Antonio 2023, pet. denied) (quoting *Flores v. Cuellar*, 269 S.W.3d 657, 660 (Tex. App.—San Antonio 2008, no pet.) (citing TEX. ELEC. CODE ANN. § 221.003(a))). "Section 221.003 provides that the court shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome." *Id.* (quoting *Slusher*, 896 S.W.2d at 242). "To overturn an election, the contestant must prove by clear and convincing evidence that voting irregularities materially affected the election results." *Id.* (quoting *Flores*, 269 S.W.3d at 660). "A contestant can establish the outcome was materially affected by showing: (1) illegal votes were counted or an election official failed to count legal votes or engaged in other fraud, illegal conduct, or mistake; and (2) a different result would have been reached." *Id.*; *see also* TEX. ELEC. CODE ANN. §§ 221.003(a), 221.011. "If the trial court can determine the candidate for whom an illegal vote was cast, it must subtract that vote from the candidate's official total." *Medlin*, 705 S.W.3d at 280 (citing TEX. ELEC. CODE ANN. § 221.011). "And if the trial court can determine the true outcome of the election after following this procedure, it must declare the outcome." *Id.* (citing *Slusher*, 896 S.W.2d at 241 (citing TEX. ELEC. CODE ANN. § 221.012(a))). "If it cannot, however, it must declare the election void." *Id.* (citing *Slusher*,

14

896 S.W.2d at 241 (citing TEX. ELEC. CODE ANN. § 221.012(b))).

"We review a trial court's judgment in an election contest for an abuse of discretion." *Rodriguez*, 679 S.W.3d at 903 (citing *Flores*, 269 S.W.3d at 660). "In determining whether the trial court abused its discretion, we may consider the sufficiency of the evidence supporting its findings of fact." *Id.* (citing *Jones v. Morales*, 318 S.W.3d 419, 423 (Tex. App.—Amarillo 2010, pet. denied)).

"In considering a legal sufficiency challenge under a clear and convincing standard, we view the evidence in the light most favorable to the judgment to determine if the [factfinder] could have reasonably formed a firm belief or conviction that the finding was true." *Medlin*, 705 S.W.3d at 292 (citing *Jones*, 318 S.W.3d at 423). "We presume the [factfinder] resolved disputed facts in favor of its findings so long as a reasonable [factfinder] could do so, and we disregard any contrary evidence if a reasonable [factfinder] could do so." *Id.* "However, we cannot disregard undisputed facts." *Id.*

"In considering a factual sufficiency challenge under a clear and convincing standard, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* (cleaned up). "Evidence is factually insufficient only if the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.* at 292–93 (cleaned up).

Even when a clear and convincing evidence standard applies, "[a] court of appeals must nevertheless still provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503

15

(Tex. 2014); *see also N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 255 n.50 (Tex. 2020) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)) ("Under any standard of review, the [factfinder] is the sole judge of the credibility of witnesses and the weight to give their testimony.").

## B.      Analysis

Here, the trial court found in its written findings that twenty-five votes were illegal for various reasons, seventeen of the illegal votes were cast for White, and Lozano won the election by a difference of seven votes after subtracting the seventeen illegal votes for White. On appeal, White specifically challenges the trial court's findings as to the illegal votes disqualified due to the voters' receiving assistance despite their ineligibility to receive assistance.[5] Section 64.031 of the Texas Election Code, titled "Eligibility for Assistance," states:

> A voter is eligible to receive assistance in marking or reading the ballot, as provided by this subchapter, if the voter cannot prepare the ballot because of:
>
> (1)  a physical disability that renders the voter unable to write or see; or
>
> (2)  an inability to read the language in which the ballot is written.

TEX. ELEC. CODE ANN. § 64.031. Under the Texas Election Code, the person who assists the voter may undertake the following conduct: (1) reading the ballot to the voter; (2) directing the voter to read the ballot; (3) marking the voter's ballot; or (4) directing the

---

[5] White does not challenge the trial court's finding that ten votes were illegal because the voters were ineligible to vote curbside; the finding that one vote was illegal because the voter failed to satisfy voter registration requirements; the finding that two votes were illegal because the voters were mentally incompetent; or the finding that three votes were illegal because the voters failed to meet residency requirements. Moreover, despite the fact that there were only two candidates and that at least two voters specifically testified they voted for Lozano, White does not challenge the trial court's finding that it "could not ascertain for whom the other [eight illegal] votes were cast."

16

voter to mark the ballot. *Id.* § 64.0321. "If assistance is provided to a voter who is not eligible for assistance, the voter's ballot may not be counted." *Id.* § 64.037.

According to White, "[i]t is undisputed that most of the voters who requested technical assistance that is in 'opening the machine' [Direct Recording Electronic Device or DRE] provided in the operation is not prohibited under Texas Election Code [§] 64.037 [sic]." (Brackets in original.) However, the trial court did not find that the voters disqualified for receiving assistance were provided prohibited "technical assistance . . . in 'opening the machine.'" Rather, the court found that these disqualified voters received assistance in "marking or reading the ballot," but were ineligible to receive such assistance because of their testimony that "they could read the English language, or both English and Spanish languages, or only the Spanish language." *See id.* § 64.031.

In any event, reviewing the legal and factual sufficiency of the evidence supporting the trial court's findings requires this Court to review all the evidence presented to the trial court under the appropriate standards of review. *See Medlin*, 705 S.W.3d at 292–93. Lozano argues that the reporter's record in this case is incomplete because it does not contain "the video deposition testimony of . . . [fifteen] witnesses [which] were . . . played in open court." He notes that the trial court "viewed and listened to the video testimony of these [fifteen witnesses]" and contends that "[i]t was White's burden to present a sufficient record on appeal." We agree.

The reporter's record makes clear that the video deposition testimony of fifteen witnesses who voted in the election at issue was played during the trial. While these video depositions were not formally offered or admitted into evidence, White never objected to

17

the playing of these video depositions for the trial court on this or any other basis.[6] After each video deposition was played, the parties presented argument as to whether the deposition witness's vote should be disqualified. The trial court eventually disqualified each of the fifteen witnesses who testified via video deposition for receiving assistance despite being ineligible to receive assistance. However, the fifteen video depositions are not part of the appellate record and the court reporter did not transcribe any of them.

"Texas courts have held that documents or items in some way made part of the trial record which are treated by the court and parties as if formally introduced into evidence are properly considered by the judge and jury on the merits of the case." *Amador v. State*, 221 S.W.3d 666, 674 (Tex. Crim. App. 2007). "Thus, they are properly included in the appellate record and considered by the appellate court." *Id.* And a court reporter is required to make a full record of the proceedings "unless excused by agreement of the parties." TEX. R. APP. P. 13.1(a); *Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 350 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied). *But see Polasek v. State*, 16 S.W.3d 82, 88–89 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding that Rule 13.1(a) is void because it enlarges a defendant's substantial rights and therefore exceeds the rulemaking authority of the Texas Supreme Court and Texas Court of Criminal Appeals). However, "[w]hile it is error when a court reporter does not transcribe all trial proceedings into the record, this error is waived if not objected to." *Brossette v. State*, 99 S.W.3d 277, 285 (Tex. App.—Texarkana 2003, pet. ref'd) (applying TEX. R. APP. P.

---

[6] The statement of facts in White's original appellant's brief clearly acknowledges that the video deposition testimony was presented to the trial court, but White never asserted any appellate issue related to the informal nature by which the deposition testimony was presented to the trial court.

33.1(a)).

Here, the video recorded depositions were played for the trial court and were treated by the parties as if they were formally offered and admitted into evidence. The court reporter failed to transcribe the depositions or include the video recordings in the appellate record. This was error, but, because White's counsel did not object to the reporter's failure, he cannot now complain of it on appeal. *See* TEX. R. APP. P. 33.1(a); *In re Est. of Arrendell*, 213 S.W.3d 496, 502 (Tex. App.—Texarkana 2006, no pet.) ("The record shows no objection, no comments made, nothing to indicate that the reporter's inaction was brought to the attention of the court with any attempt to correct the failure at a point at which the trial court could have corrected the omission."); *Brossette*, 99 S.W.3d at 285.

The Texas Rules of Appellate Procedure provides a method to correct inaccuracies in the record. TEX. R. APP. P. 34.6(e). The rule begins by allowing corrections by agreement, and if the parties cannot agree on whether or how to correct the record, the rule describes how to settle the dispute after notice and hearing before the trial court. Finally, such correction may be made at the appellate level by abating to the trial court for resolution. *Id*. R. 34.6(e)(3). Here, neither party has moved this Court to allow supplementation or correction of the record. Furthermore, both parties agree the video depositions were not transcribed by the court reporter. Each party appears to rely on the record's incompleteness to support their argument—Lozano argues that White's sufficiency points must be denied for lack of a complete record, and White argues in his reply brief that the trial court's judgment should be reversed and that this Court should render judgment declaring him the winner of the November 7, 2023 election based on an

19

incomplete record.[7] In such a posture, it is not proper for this Court to sua sponte abate this matter to the trial court to correct the record. *See In re Est. of Arrendell*, 213 S.W.3d at 500 (refusing to abate the case due to missing transcriptions or video recordings of two witnesses' testimony because the parties did not dispute the accuracy of the record and each party relied on the incompleteness of the record to support their argument).

"Although an appellant may properly challenge the . . . sufficiency of evidence supporting the trial court's judgment against him, he cannot prevail in any evidentiary challenge without first meeting his burden of presenting a sufficient record on appeal." *Public, Inc. v. County of Galveston*, 264 S.W.3d 338, 341 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991)). "[W]ithout a complete reporter's record, it is impossible to review all the evidence presented to the trier of fact or to apply the appropriate sufficiency standards." *Sareen v. Sareen*, 350 S.W.3d 314, 317 (Tex. App.—San Antonio 2011, no pet.). Therefore, when an appellant files a partial reporter's record, we presume that the missing portions of the reporter's record support the trial court's judgment. *See Bennett v. Cochran*, 96 S.W.3d 227, 228–30 (Tex. 2002) (explaining that, absent complete record on appeal, the court of

---

[7] We note that White did not raise any argument related to the incomplete record until he filed his reply brief. "An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court." *City of Donna v. Ramirez*, 548 S.W.3d 26, 34 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) (quoting *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)). White contends for the first time in his reply brief that "[i]t was incumbent on [Lozano] to have transcribed the 15 voters' testimony . . . for review by this Court." Our rules permit a "nonstenographic recording of an oral deposition"—such as a video deposition—to "be used to the same extent as a deposition taken by stenographic means." TEX. R. CIV. P. 203.6(a); *see also* TEX. R. EVID. 801(e)(3) (indicating that a deponent's statement is not hearsay and "[t]he deponent's unavailability as a witness is not a requirement for admissibility"). However, the trial court may require a party seeking to use a nonstenographic recording to first obtain a complete transcript of the deposition recording from a certified court reporter upon showing of good cause. *See id.* There is no indication in the record that the trial court required Lozano to submit complete transcripts of the fifteen video depositions.

appeals must presume the omitted items supported the trial court's judgment); *see also Abraham v. Hernandez*, 705 S.W.3d 416, 424 (Tex. App.—El Paso, 2024 no pet.). An appellant can avoid this presumption by complying with Texas Rule of Appellate Procedure 34.6(c), which requires that the appellant include in his request for a partial reporter's record "a statement of the points or issues to be presented on appeal." TEX. R. APP. P. 34.6(c)(1). When this requirement is met, the appellate court must presume the partial record constitutes the entire record with respect to the issues raised on appeal. *Id.* R. 34.6(c)(4).

Here, the record shows that White timely requested the reporter's record but did not specifically designate the fifteen video depositions as exhibits to be included therein. *See* TEX. R. APP. P. 34.6(b)(1) (providing that the appellant must request in writing that the official reporter prepare the reporter's record and that "[t]he request must designate the exhibits to be included"). In addition, White has not complied with Rule 34.6(c)'s requirements for filing a partial reporter's record. *See id.* R. 34.6(c). Accordingly, we must presume that the omitted portions of the reporter's record support the trial court's judgment. *See Bennett*, 96 S.W.3d at 229 ("There is no question that, had [the appellant] completely failed to submit his statement of points or issues, Rule 34.6 would require the appellate court to affirm the trial court's judgment."); *see also Abraham*, 705 S.W.3d at 424 ("[A]n appellant's failure to include the required statement of the issues under Rule 34.6(c) deems the record incomplete, and we 'presume[] the omitted portions of the reporter's record are relevant and support the trial court's judgment.'"). White raises evidentiary sufficiency points as part of his second, third, and fourth issues concerning whether the trial court abused its discretion in invalidating votes and declaring Lozano the

21

winner of the November 7, 2023 election. Presuming that the missing portions of the record support the trial court's findings and judgment, we overrule White's second, third, and fourth issues. *See id.*

## IV. VIOLATION OF VOTING RIGHTS ACT OF 1965

In his fifth issue, White argues that the trial court erred when it applied "strict construction" of § 64.031 of the Texas Election Code by disqualifying seventeen votes in violation of § 208 of the Voting Rights Act of 1965. *See* 52 U.S.C. § 10508 ("Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."). In making this argument, White provides a single citation to *OCA Greater Houston v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017). In *OCA Greater Houston*, the Fifth Circuit Court of Appeals determined whether § 61.033 of the Texas Election Code, which imposes restrictions on a person's eligibility to serve as an interpreter, violated § 208 of the Voting Rights Act. White neither explains the relevance of *OCA Greater Houston* to his argument on appeal nor applies it to the particular facts of his case. *See Rubsamen*, 322 S.W.3d at 746. Accordingly, we hold White has inadequately briefed this issue.[8] *See* TEX. R. APP. P.

---

[8] In his reply brief, White additionally argues that "[e]lection [a]dministrators have been enjoined from enforcing Election Code 64.031 per the Fifth Circuit's [r]uling in *OCA Greater Houston v. Texas*, 2022 U.S. LEXIS 100262." We have found no such case issued by the Fifth Circuit Court of Appeals, other than *OCA Greater Houston v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017), which, as discussed above, pertains to § 61.033, and not § 64.031. "The requirement that the appellant's brief contain a clear and concise argument is not satisfied by merely uttering brief conclusory statements unsupported by legal citations." *Atkinson v. Sunchase IV Homeowners Ass'n., Inc.*, 700 S.W.3d 659, 664 (Tex. App.—Corpus Christi–Edinburg, 2020), *rev'd on other grounds*, 643 S.W.3d 420 (Tex. 2022) (cleaned up); *see* TEX. R. APP. P. 38.1(i). "Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint." *Id.* "We are not allowed to perform an independent review of the record and applicable law to determine whether there was error." *Id.* "It is not this [C]ourt's duty to review the record, research the law, and then fashion a legal argument for appellant when [he] has failed to do so." *Id.*

38.1(i) (stating that appellant's brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Lopez v. State*, 672 S.W.3d 915, 928 (Tex. App.—Corpus Christi–Edinburg 2023, pet. ref'd) (holding that appellant's issue was waived through failure to provide citations to the record and to pertinent legal authority). We overrule White's fifth issue.

## V.    CONCLUSION

We affirm the trial court's judgment.[9]

CLARISSA SILVA
Justice

Delivered and filed on the
30th day of June, 2025.

---

Moreover, the issue was raised for the first time in White's reply brief. *See City of Donna*, 548 S.w.3d at 34. Accordingly, we conclude that White has waived this issue.

[9] As we held in *Trevino v. Segovia*, we conclude that the trial court's findings of fact in this case "shed light on the events that transpired at trial, which are extremely troubling to the sanctity of our electoral process and undermine the purity of the ballot." 706 S.W.3d 399, 403 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.). "As this Court stated, '[e]lection fraud perverts democracy and constitutes a grave offense, not only against the opposing candidate but against society as a whole.'" *See id.* (quoting *O'Cana v. Salinas*, No. 13-18-00563-CV, 2019 WL 1414021, at *11 (Tex. App.—Corpus Christi–Edinburg Mar. 29, 2019, pet. denied) (mem. op.)). However, "we are mindful of our solemn duty to preserve and protect the integrity of the election process." *Id.* (quoting *O'Cana*, 2019 WL 1414021 at *11).